[Civil No. 4204. Filed June 17, 1940.]

[103 Pac. (2d) 662.]

KENNETH S. SCOVILLE, Administrator De Bonis Non of the Estate of CARRIE VAIL, Deceased, Appellant, v. VAIL INVESTMENT COMPANY, a Corporation, THIRZA J. GARVEY, HARRIETT E. LEECH, GEORGE M. VAIL and ROBERT W. VAIL, Appellees.

Messrs. Moore & Romley, for Appellant.

Messrs. Conner & Jones, Mr. Tom K. Richey and Mr. Paul J. Cella, for Appellees.

LOCKWOOD, J.— By agreement of the parties, the three appeals which are discussed in this opinion were presented to the court for consideration as a whole. Based upon the rule that the trial court is presumed to have found every fact necessary to sustain its judgment that may reasonably be deduced from the evidence, the general factual situation may be stated as follows, with more details given as this opinion requires.

Carrie Vail, hereinafter called deceased, had for many years been a resident of Pima county. She had been married twice, and by the first marriage had one child, Maude Vail Merriam, and by the second four

children, Thirza J. Garvey, Harriett E. Leech, George M. Vail and Robert W. Vail. In 1932 she was a widow approximately seventy-three years of age, and possessed property, real and personal, of the value of about $125,000. In that year she consulted with Tom K. Richey, who had been her attorney for a number of years, as to how she could make disposition of her property so that after her death there would be no expense of probate which, if the estate was handled in the ordinary manner, would amount to some ten or twelve thousand dollars. She also told Richey that if she disposed of her property by will her children would press her from one side or the other to change its terms, and she wanted to put it beyond her power to make a change, in order to avoid such pressure and the necessary unpleasant conditions arising therefrom. Richey suggested that the best way would be to organize a corporation, turn her property over to it in consideration of all of its stock, and then have the stock issued as she might wish. This, he said, might be in one of two ways, (a) the stock might be issued to her immediately and she might then endorse the certificates and place them in the hands of a third party irrevocably, for delivery after her death, or (b) she might agree with the corporation that all of the stock should be issued in accordance with her orders, and then make an order distributing the stock in the way she wanted, and turn it over to some person so its delivery was irrevocable, and the stock could then be issued in accordance with the order to the parties designated therein, after her death. She adopted the last of the two plans, and in accordance therewith in November, 1932, the Vail Investment Company, hereinafter called the company, was incorporated with an authorized capital stock of $50,000, divided into 50,000 shares of the par value of $1 each. At the organization meet-

ing of the company three shares were actually issued, one each to Mrs. Vail, Thirza J. Garvey, her daughter, and Dan E. Garvey, her son-in-law, who were elected directors and constituted the entire board. Mrs. Vail was then elected president and treasurer of the company, and Garvey secretary. By resolution of the board of directors it was provided that deceased, as treasurer, should place the funds of the company on deposit in a designated bank, and that she should have sole and irrevocable power and authority to draw on such funds. At the same time she submitted a written offer to the company, which reads as follows:

"To the Board of Directors of
"Vail Investment Co.,
"Tucson, Arizona.

"I hereby offer to sell, transfer and assign unto your corporation all of the following described real and personal property, to-wit:

"(Here follows a description of real estate and an enumeration of eight promissory notes aggregating $70,000, each secured by mortgage).

"For and in consideration of which you shall issue and deliver as I may order same, 49,997 shares of the capital stock of your corporation, fully paid and non-assessable."

Thereupon the board of directors accepted the offer and by resolution

" . . . the President and Secretary were instructed and empowered to issue 49,997 shares of the capital stock of this corporation to the order of Carrie Vail, upon delivery of proper instruments of conveyance by the said Carrie Vail to this company for said property."

A conveyance to the company of the property described in the offer was made by deceased, and at the same meeting she signed and delivered to Garvey, in a sealed envelope, with oral instructions for him to

deliver it to the company on her death, the following letter:

"Tucson, Arizona
"November 28th, 1932
"To the Board of Directors of
"Vail Investment Co.,
"Tucson, Arizona.
"You are hereby ordered and directed, upon my death, to issue and deliver the 49,997 shares of the capital stock of your corporation of which I am the owner and to which I am entitled, under my offer and your acceptance thereof, of date November 28th, 1932, as follows, to-wit:
"Robert W. Vail.................12,500 shares
"Thirza J. Garvey...............12,498 shares
"George M. Vail.................12,500 shares, and
"Harriett E. Leech..............12,499 shares

49,997
"(Signed) CARRIE VAIL."

Garvey accepted the letter and placed it in his safe deposit box, to which the deceased did not have access except with his permission, where it remained until after she passed away, when it was delivered by Garvey to the company, and thereupon the stock mentioned in the letter was issued as it directed.

At a later time deceased, without further consideration, transferred to the company other property of the value of between forty and fifty thousand dollars, which at the time constituted all the remainder of her property, except a life interest in her residence in Tucson and certain stock in the American Telephone and Telegraph Company and other corporations, which she desired to pass to various donees. Acting under the advice of Richey, she endorsed on the certificates of stock the names of the donees, and delivered them to Garvey with instructions to hand them to the donees upon her death, which was done. However, certain dividends, which had been made before her death, had

been mailed to her in the form of checks payable to her, and these checks were on hand at the time of her death. The transfer of the stock referred to on the books of the company did not take place until after her death, and of course did not carry the previously declared dividends. The board of directors of the company by resolution had fixed a salary for Mrs. Vail in the sum of $350 per month, which resolution remained in force until her death. This amount was not paid to a separate account of hers at fixed periods, but she drew checks on the account of the company from time to time as she desired. At the time of her death the amount of this salary, at the rate of $350 per month, exceeded by nearly $5,700 the sums which she had drawn for her personal use from the funds of the company. Mrs. Vail died intestate in Tucson on January 7, 1937.

It was recognized by the four children who received the stock of the company as above that federal and state inheritance taxes would have to be paid on its full value, and accordingly Garvey, who apparently represented Mrs. Vail in all her business affairs during the last years of her life, drew from the funds of the company approximately $8,000 for the payment of these taxes and for the funeral expenses of Mrs. Vail. These payments were made without any probate of Mrs. Vail's estate, or the direction or approval of any court. A question arose later, however, as to what should be done in regard to the dividend checks above referred to, amounting to some $369, and it was decided that it would be necessary to probate Mrs. Vail's estate in order to handle them. Garvey, therefore, applied for and was granted letters of administration in 1937, setting up that the total estate consisted of not to exceed $400, and later inventorying only the checks above mentioned. The matter was carried through probate in the regular manner required for estates of

that size, and on October 11, 1938, the court settled the accounts and distributed the proceeds of the dividend checks above referred to. Nothing appears in the record of these proceedings indicating in the slightest degree that the estate of deceased had any assets except the dividend checks.

On January 10, 1939, there was filed in the superior court of Pima county a petition by Kenneth S. Scoville for his appointment as administrator *de bonis non,* upon the nomination of Maude Vail Merriam, the oldest daughter of deceased, who, as it appears above, was omitted by her mother from any participation in the distribution of the stock of the company. Mrs. Garvey opposed the application, but her objection was overruled, and Scoville was appointed. Thereafter he caused a citation to issue for various witnesses to appear for examination, at which time most of the facts above set forth were developed.

On March 21, 1939, Scoville filed suit against the Vail Investment Company for $5,709.57, being the accrued salary of deceased above referred to, and on the same day filed another suit against the company and the children of deceased to whom the stock of the company had been delivered, asking that the issuance of the stock to them should be declared void. Thereafter all of the children, except Mrs. Merriam, filed a petition to vacate all the proceedings in the estate subsequent to the discharge of the former administrator, on the ground that the court had no jurisdiction to appoint an administrator *de bonis non,* or, if it did, his appointment was improvident, wasteful and wrong in law. This petition was denied, and an appeal was taken from the order denying it, being one of the appeals discussed in this opinion.

The suit of the administrator *de bonis non* against the company for the balance of salary due proceeded to trial, and judgment was rendered in his favor,

whereupon the company promptly appealed, this appeal being also considered in this opinion.

The other suit for the cancellation of the stock also wended its way through the trial court, and judgment was rendered against the administrator *de bonis non,* denying the cancellation of the stock, whereupon he appealed, this appeal being the third and the last one arising from this complicated situation.

We consider first the appeal from the order refusing to vacate the proceedings in the estate of Carrie Vail, subsequent to the discharge of Garvey as administrator, which was based on the contentions (a) that the court had no jurisdiction to appoint an administrator *de bonis non,* and (b) that such appointment was an abuse of discretion as being improvident. The statute, Revised Code of 1928, under which the appointment of Scoville was made reads, so far as material, as follows:

"§ 4091. Discharge of personal representative; after-discovered property. . . . The final settlement of an estate, and the discharge of the executor or administrator, shall not prevent a subsequent issue of letters testamentary, or of administration, if other property of the estate be discovered, or if it become necessary for any cause that letters should be again issued."

■ This leaves it discretionary with the probate court to appoint an administrator, after the estate has been finally settled and the first administrator discharged, on one of two grounds: (a) The discovery of other property of the estate, and (b) any reason which in justice and law requires further administration. In considering the question we must, of course, view it in the light of the facts as they were known to the trial judge at the time the appointment was made.

■ It is evident from the foregoing statement of facts that a situation existed in which there was at least a reasonable possibility that much of the estate of Mrs. Vail had never been properly probated. It

further appeared that a bitter contest would undoubtedly arise between her heirs as to whether this was true or not. The best way to settle the matter finally was undoubtedly through proper action in the Vail estate. Under such circumstances we think it would have been an abuse of discretion for the court to refuse to appoint a new administrator, so that the various issues, both of law and fact, which have arisen during the progress of all this litigation could be properly determined. It follows that the order of the trial court in refusing to vacate the proceedings was proper and its judgment to that effect must be affirmed.

The next question is the appeal by Scoville from the judgment in favor of the Vail Investment Company and the four children of Mrs. Vail. The issues involved in that appeal reduce themselves to the one question of whether the order for delivery of stock in the company after the death of Mrs. Vail above set forth is a valid gift *inter vivos,* or whether it is, as a matter of law, of a testamentary nature. If it is the first, the judgment should be affirmed. If it is the latter, it must be reversed, for admittedly the order is not valid as a will.

To constitute a gift *inter vivos,* it is essential that there be a donative intent, that the gift be executed by delivery and that it vests an irrevocable title upon such delivery. It is not necessary, however, that the enjoyment of the thing given take effect immediately. That may be postponed until some future event certain, such as the death of the donor. Does the record disclose a valid gift *inter vivos* between deceased and the four children named in the order above set forth? A donative intent is apparent, and there was an unconditional delivery to a third party in escrow. Was the delivery irrevocable? Certainly there is nothing upon the face of the order which indicates in the slightest manner that deceased reserved to herself the right

to revoke it or recall the delivery. It is complete and unconditional in its terms as an order to the company, which was the trustee of the unissued stock for the purposes set forth in the agreement between it and Mrs. Vail, to issue the stock to named parties upon the happening of an event certain. We think the only reasonable conclusion to be drawn from the face of the order and the undoubted fact of delivery was that it was irrevocable and, therefore, a valid gift *inter vivos*. But, assuming for the sake of the argument that it was ambiguous on its face as to whether it was irrevocable, the law is that in such cases parol evidence is admissible to show the intent of the donor.

Evidence of this nature was offered and admitted by the trial court, and it is certainly sufficient to sustain the presumptive finding that it was the intent and desire of Mrs. Vail to make a definite, positive and irrevocable gift of her property to her four children, reserving only the enjoyment of the property to herself until her death. This latter condition, as we have said, does not divest the instrument of its character as a gift *inter vivos*. If the order showed on its face it was irrevocable, although it might be technical error to admit parol evidence of the intent of the deceased, such error could not have been in any manner prejudicial, while if it be considered ambiguous the parol evidence was properly admitted and is conclusive on the question of intent. Such being the case, the judgment of the trial court rendering judgment against Scoville, in the suit asking that the stock issued by the company be cancelled and declared void, must be affirmed.

The third appeal presents a question of greater difficulty. Admittedly the Vail Investment Company owed to Mrs. Vail at the time of her death some $5,700, and this sum was, therefore, an asset of her estate. But, it is said, since the funds of the company were used in paying taxes which were due from the estate in

an amount greater than what it owed to the estate, it was entitled to set off the one item against the other.

What were the circumstances of the payment? Following the rule as stated we must assume them to be as follows: The company was a legal entity entirely separate and distinct from any of its stockholders, and in the eyes of the law must be considered as such. On the other hand, the four children of Mrs. Vail, to whom she had given practically all of its stock, were the only parties interested in the affairs of the company or its assets, and any change in the value of its assets or liabilities affected them in an equal degree. They knew there would be state and federal taxes accruing at the death of Mrs. Vail, which would have to be paid. They also knew that if such taxes were not paid out of her residuary estate, as the federal statute at least requires, recourse would be had against them individually in proportion to the value of their interest in the assets of the company. The regular legal process to follow would be to have a proper administration of all of her assets, including the $5,700 above referred to, which would eventually result in the exhaustion of the estate in the payment of the taxes and funeral expenses, and a later settlement by the four children of the respective amounts of taxes still due on their respective interests in the stock given them by their mother.

It was undoubtedly thought by all of the children that in order to avoid the expense and circumlocution of this procedure, it would be simpler and in the long run less expensive to take money which legally belonged to the company and use it to pay the taxes and funeral expenses, and say nothing about either the amount the company owed Mrs. Vail, or what it had paid for the purposes mentioned in the probate proceedings in which Garvey acted as administrator.

 The company takes the position that the payments in question were made by Garvey as an administrator *de son tort* from funds belonging to the estate of Mrs. Vail, and appeals to the well-known rule that when such an administrator makes any payment from the assets of the estate before his appointment, that his later appointment validates any previous acts which would have been valid if done after his appointment. We think the rule thus stated is correct, but that it does not apply to the facts of the case. This was not a payment made by the administrator from the funds of the estate, but by the company from its own funds. It is unnecessary, therefore, for us to discuss the point raised by Scoville that the payments would have been void even if made by the administrator *de son tort,* since the probate court had no opportunity to determine whether such payments made for funeral expenses and taxes were correct, and that such an issue may not be considered in a suit by the administrator to recover from the company part of the assets of the estate. We think the rule governing the situation is set forth in the Restatement of the Law of Restitution, in section 112 as follows:

"A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons."

 It may be urged that the exception to the rule stated applies, in that the benefit conferred upon the Vail estate was under circumstances making such action necessary for the protection of the estate or of third persons, being in this case the stockholders of the company. Sections 113 to 117 of the Restatement, *supra,* set forth many illustrations of when the protection of the interests of a beneficiary or of third persons

requires restitution under the exception to the general rule in section 112, *supra,* and in none of these do we find anything analogous to the present situation. The "necessity" referred to in section 112, *supra,* seems always to be one immediate and vital, and which will not permit delayed action. The payment of the taxes involved herein was not of that nature. As a matter of law, we think the company was not entitled to restitution of the amount paid by it on federal and state taxes.

It may be contended that under the circumstances set forth in subdivision (b) of the comment on section 115 of the Restatement, *supra,* restitution may be had for the amount expended for funeral expenses. But the comment under that section, while recognizing the right of recovery of expenses for the burial of the dead, expressly states that if an intervening stranger pays funeral expenses, if relatives of the deceased are available and are not given an opportunity to make the necessary funeral arrangements, restitution may not be had. The company, the intervening stranger, which paid the funeral expenses did not give to the children of the deceased, so far as the record shows, the opportunity to make the necessary funeral arrangements, but itself paid them. Naturally if one is not entitled to restitution in a direct action, he may not obtain it by means of counterclaim or set-off. Under the law, we are of the opinion that the trial court properly refused to allow the company to set off against the amount it admittedly owed the estate of Mrs. Vail the payments made by it for taxes and funeral expenses.

It may be urged, however, that even though this be true as a matter of law, the conclusion reached is wholly inequitable, in that it is based on the form rather than the merits of the whole transaction. And, indeed, if it were not for one thing, there might be

merit in the contention. The familiar maxim of equity is that he who seeks equity must do equity. While it is true at least the federal taxes in question were primarily payable from the residuary estate of deceased and cannot be recovered by such estate in an action against the individual transferees of the stock, yet this is a statutory rule enacted for the benefit of the government and, in our opinion, is not based on the equities as between the estate and the transferees. It must be remembered that there were five natural heirs of Mrs. Vail, of whom four only participated in the transfer of the stock of the company. Her residuary estate would ordinarily be divided among the five heirs, but the effect of allowing the claim of the company for the amount of the taxes paid would be to make the interest of Maude Vail Merriam in the estate pay a large portion of the taxes on a gift made to her brothers and sisters. We are of the opinion that such payment, though it would have been required by the statute if the proper proceedings had followed in the probate of the estate, is inequitable, and the claim of the company that it is not equitable to follow the strict letter of the law is met by the answer that it is inequitable that the four children should require the fifth to pay part of the taxes on property which they have received. The funeral expenses are not within the same equitable rule, but in view of all the facts in the case, we think, since the law on that point was with Scoville, the equities do not call for a reversal of the judgment because of that item alone.

On the whole situation, we are of the opinion that the company is not entitled either as a matter of law or equity, to set off against the amount it admittedly owed the estate of Mrs. Vail the amount which, with full knowledge of the facts and the law and without mistake, coercion or request, it unconditionally paid for the benefit of the estate of Mrs. Vail. The judg-

ment of the trial court must necessarily be affirmed in that case also.

There are many other specific matters ably presented by the briefs and in the oral arguments, which we have considered, but in view of what we have already said they could not change the result and their discussion would extend this opinion to unreasonable length.

Judgment affirmed.

ROSS, C. J., and McALISTER, J., concur.