**Harry SCHLANGER, Plaintiff,**

v.

**Eva ROTHMAN and Ætna Life Insurance Company, a corporation, Defendants.**

**Civ. A. No. 15384.**

United States District Court
W. D. Pennsylvania.
March 12, 1958.

Dale Cleland, Stewart, Jones, Cleland & Hurtt, Pittsburgh, Pa., for plaintiff.

Herbert Sachs, Sachs, Pervin & Kaufman, Pittsburgh, Pa., for defendant Eva Rothman.

MARSH, District Judge.

This action was brought by Harry Schlanger, plaintiff, against Eva Rothman and Aetna Life Insurance Company, defendants, to recover possession of a certain life insurance policy. At pretrial conference, with consent of all parties, the action was dismissed against the Insurance Company. The case was tried to the court without a jury. The court makes the following findings of fact, conclusions of law, and decree:

### Findings of Fact

1. Plaintiff is a citizen of Arizona residing in Tucson.

2. Defendant is a citizen of Pennsylvania residing in Pittsburgh.

3. A policy of insurance, No. N679,-486, dated May 26, 1927, was issued on the life of plaintiff by Aetna Life Insurance Company, the said policy having a face value of $10,000 and a cash value as of the date suit was filed in excess of $3,000. This policy is in full force and effect. Plaintiff has paid all the premiums due thereon.

4. On August 6, 1955, plaintiff was the owner of said policy and notified the insurer that he desired to designate defendant as the primary beneficiary and Fred Rothman, a grandnephew, as contingent beneficiary. This change of beneficiary was duly effected by the insurer pursuant to the terms of the policy, after which the policy, accompanied by a letter of transmittal under date of September 1, 1955, was delivered by mail to plaintiff at his home.

5. By the terms of the policy, plaintiff reserved the right to change the beneficiary.

6. Plaintiff owned six or seven other policies of life insurance which at all times pertinent to this controversy were in the custody of plaintiff's local insurance agent.

7. The policy,[1] the letter of transmittal,[2] and the envelope in which they were mailed remained in the den of plaintiff's home in Tucson from the time they were delivered to him by mail in September, 1955, until removed therefrom by defendant in February, 1956; since then defendant has had possession of the policy and letter until she produced them at the trial where they were admitted in evidence. The policy and letter of transmittal are now in the custody of the Clerk of Court.

8. In the summer of 1956, plaintiff desired to again change the beneficiary in the policy and borrow on it but was unable to accomplish this because he was unable to deliver the policy to the insurer. Plaintiff thereupon requested defendant to return the policy to him. She refused, claiming ownership.

9. Plaintiff is 79 years old. Since the death of his wife in 1953, he lived in a ranch-type dwelling containing 6 or 7 rooms. Informed that he was about to lose the services of a housekeeper and that the defendant, his niece, was willing

---

1. Plaintiff's Exhibit 12–A.

2. Defendant's Exhibit B.

to substitute in that capacity, in May 1955 plaintiff invited defendant to Tucson to keep house for him.

10.  At that time, defendant, recently widowed, worked as a saleslady at Katzman's Dress Shop, McKeesport, Pennsylvania.  She resided with a sister where she received free room and board.  Responding to plaintiff's invitation, she secured a temporary leave of absence from Katzman's and arrived in Tucson about June 5, 1955.  Plaintiff paid her transportation expenses.  Prior to this time, defendant had not seen plaintiff for about 10 or 15 years, but they had kept in contact with each other and were on friendly terms.

11.  The defendant undertook the duties of housekeeper at plaintiff's home; she also administered hypodermics and drove him about in his car.  After a month, she resigned her position at Katzman's and agreed to stay on as housekeeper, for which services plaintiff agreed to and did pay her $200 per month plus room and board.  He also gave her some jewelry and there is some testimony that he gave her some other money and paid some of her medical expenses.  For a time defendant handled plaintiff's bank accounts as his attorney-in-fact.

12.  In early October, 1955, plaintiff and defendant visited Pittsburgh where plaintiff discovered he was in need of surgery.  The parties returned to Tucson about the end of October.  Plaintiff entered the hospital there about November 1, 1955, where he remained until about March 1, 1956; he underwent three surgical operations for cancer and was quite critical at times.  Defendant remained in control of plaintiff's home until the latter part of February, 1956, when plaintiff discharged her.  She left the house, taking the policy in suit with her.

13.  Plaintiff's daughter also lived in Tucson with her husband and three children.  The relationship between the daughter and defendant was strained.  Plaintiff was living with his daughter in her home at the time of the trial.  He has a life income from a motel and probably other assets.

## Discussion

The defendant claims that title to the policy was transferred to her by way of gift or in consideration of her employment as plaintiff's housekeeper.

We refer to the gift law of Arizona for the principles of law applicable to the issues before us.

Section 33–601 of the Arizona Revised Statutes Annotated [3] provides as follows:

"A gift of any goods or chattels is not valid unless the gift is in writing, duly acknowledged and recorded or by will, duly proved and recorded, or unless actual possession of the gift is passed to and remains with the donee or some one claiming under him."

Since there is no averment here that the alleged gift was executed by written instrument or will, the validity of the gift must be in conformance with the latter portion of the statute which has been held by Arizona Title Guarantee & Trust Co. v. Wagner, 1952, 75 Ariz. 82, 251 P.2d 897 to be declarative of the common law of Arizona.

The essentials of a gift inter vivos, under the common law of Arizona, are a donative intent, delivery, and acceptance.  It must appear that the donor manifests a clear and unmistakable intent to give the property and pass possession and control to the donee, and the owner's surrender of control must be voluntary and intentional.  Arizona Title Guarantee & Trust Co. v. Wagner, supra; Scoville v. Vail Inv. Co., 1940, 55 Ariz. 486, 103 P.2d 662; McNabb v. Fisher, 1931, 38 Ariz. 288, 299 P. 679.

A life insurance policy may be the subject of a valid gift, but the transaction must meet the requirements of

3.  This section substantially reenacts the previous provision of the Arizona Code Annotated of 1939, § 58–102.

the law with regard to donative intent and delivery. 38 C.J.S. "Gifts" § 53, p. 838.

One affirmatively asserting a gift inter vivos usually has the burden of proving it including all the elements essential to its validity. In order that the owner of property may not be circumvented by fraud, alleged gifts inter vivos are viewed by the courts with caution, and to sustain them, the evidence must be clear and convincing, which means something more than a mere preponderance of the evidence. McNabb v. Fisher, supra; 38 C.J.S. "Gifts" § 67 et seq., p. 869.

An alleged donee's mere possession of a policy of insurance is not of itself sufficient to establish a gift thereof. 38 C.J.S. "Gifts" § 67(b), p. 878.

At trial plaintiff proved he was the owner of the policy in suit. The defendant testified that plaintiff gave her the policy when it arrived by mail from the Insurance Company at his home shortly after September 1, 1955. She said he told her that the policy was hers, that she should keep it with her things, and under no circumstances was she to give it up. Her testimony was somewhat weakened on cross-examination when she agreed that plaintiff wanted her to have the policy in case anything happened to him.

Plaintiff categorically denied that he gave the policy to defendant. His testimony was somewhat weakened when he also said he could not remember giving it to her.

Fred Schlanger, a brother, visited plaintiff about November 1, 1955, just before plaintiff entered the hospital for surgery. He testified[4] that he heard plaintiff say he had made provision for defendant: "I have left her a policy. I want her to be well provided for." He admitted he could not recall the exact words. This witness also testified that on a subsequent visit he found the policy in a pigeonhole in plaintiff's desk in his den and observed that defendant was named as beneficiary therein. Defendant testified that she kept the policy in plaintiff's locked filing cabinet with her jewelry.

The foregoing is the sum of the direct evidence bearing on the plaintiff's donative intent and delivery. With respect to both issues it is simply oath against oath.

Plaintiff's declaration to his brother adds very little. Having been made in the hospital just prior to a serious operation, it has testamentary implications and is ambiguous; it is as consistent with his having designated the defendant a beneficiary of the proceeds of the policy after plaintiff's death, as with his having made a gift of the policy itself; and it is more consistent with his having made a gift causa mortis of the policy to her than with a gift inter vivos.

The evidence of delivery is not clear. Defendant says plaintiff handed her the policy and told her to keep it with her things in his filing cabinet, which she did. Plaintiff had the only key to the file which he gave to defendant when he went to the hospital. Fred Schlanger's testimony that he found the policy in a pigeonhole in plaintiff's desk tends to negative a complete delivery or surrender of all control. Defendant took the policy with her when she was discharged and moved out while plaintiff was in the hospital. At that time she was in control of plaintiff's home and had access to his filing cabinet and desk.

Applying the principles stated, it is the opinion of the court that defendant had the burden of proving the gift, and that she failed to meet it. We think that the evidence with regard to the essential elements of donative intent and surrender of all control of the policy does not preponderate in favor of defendant and is far from being clear and convincing as is required.

4. Fred Schlanger's deposition was taken on behalf of the defendant, but at the trial was offered by plaintiff as part of his case.

■ Defendant in her brief argues that she is entitled to judgment "on the theory of a contract between the plaintiff and defendant wherein the plaintiff was to, and did, name the defendant as beneficiary of the policy in consideration of her continuing in his employ". Defendant did not testify directly that any such contract was entered into; on the contrary, her testimony was directed toward establishing a gift. Insofar as appears, the plaintiff voluntarily designated defendant as beneficiary and without her knowledge; she did not even know of his intention until after the change had been accomplished, which was long after the contract of employment had been entered into. Nowhere does it appear that plaintiff agreed with defendant to name her an irrevocable beneficiary; instead he specifically retained the right to change the beneficiary. All that plaintiff did was to give defendant a hope or expectation of the proceeds of the policy if she survived him.

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter.

2. It being undisputed that plaintiff was the owner of the policy, the burden was upon defendant to prove by clear and convincing evidence every essential element of a valid gift inter vivos.

3. The defendant failed to meet her burden of proof to establish a gift inter vivos.

4. The burden was upon defendant to prove by a fair preponderance of the evidence a promise to transfer title to the policy as an inducement to or in consideration of her remaining as plaintiff's housekeeper.

5. The defendant failed to meet her burden of proving a promise to transfer title to the policy to her.

6. The defendant failed to prove that plaintiff agreed to name her an irrevocable beneficiary of the policy as an inducement to or in consideration of her remaining as plaintiff's housekeeper.

7. The plaintiff is the present owner of life insurance policy No. N679,486 issued by Aetna Life Insurance Company, and he is entitled to its possession.

8. An order should be entered directing the Clerk of Court to deliver said policy to the plaintiff.