463 P.2d 818

**Charles C. ARMER and Gertrude Hill,
Appellants,**

**v.**

**Lillian ARMER, Appellee.**

**No. 9675.**

Supreme Court of Arizona.

In Banc.

Jan. 15, 1970.

Rehearing Denied Feb. 17, 1970.

Otto Linsenmeyer and Frank E. Dickey, Jr., Phoenix, for appellants.

R. Kelly Hocker, Tempe, for appellee.

HAYS, Justice.

Charles Armer, defendant below, appeals from a trial court divorce decree which awarded to Lillian Armer, his wife and plaintiff, an absolute divorce and divided the community assets of the two parties. Mrs. Gertrude Hill, Charles' mother

and a co-defendant in the action below, appeals from that part of the trial court's judgment which was adverse to her own property claim. We affirm in part and reverse in part the judgment below, and remand the case to the trial court for further proceedings not inconsistent with this opinion.

The action was tried without a jury, and in accordance with Ariz.Rules Civ.Proc. 52(a), 16 A.R.S. the parties requested the trial court to make written findings of fact and conclusions of law prior to the entry of judgment. Defendants challenge the factual findings, legal conclusions and judgment of the court as erroneous and incomplete.

The trial court found, and the evidence substantiates, that Charles and Lillian were married on March 27, 1947, and that four children were subsequently born as the issue of their marriage. During their eighteen or so years of marriage, Charles was sporadically employed, and although he possessed a bachelor's degree from the University of California, he seldom held his employment positions for more than a couple of years. At various times during their married life, Charles worked as an insurance agent, a salesman, and a state real estate appraiser. During much of their marital relationship, Charles spent extended periods of time away from his wife and children.

In 1961, Charles and Lillian became interested in a piece of ranch property known as Coon Creek, situated in Gila County, Arizona. The then owner of the property had experienced financial difficulties, and in October of 1961 Charles and Lillian decided to purchase the proprety. Upon tender of a down payment, title to the property was taken in the names of Lillian and Charles Armer, as husband and wife. At the time, Charles was about half way through a 2½ year period of extended unemployment, and the Armer family was being substantially supported by periodic payments from Charles' mother, the defendant Mrs. Hill. Knowing that the title

to Coon Creek was in the name of Charles and Lillian, Mrs. Hill paid the balance due, some $20,000 on the ranch. Lillian was unaware of Mrs. Hill's financial contribution to the purchase price, and had previously asked Charles not to borrow money from his mother to pay for the property.

Although the Armers originally intended to move their family to the ranch, this was never done. The children were in school in Tempe at the time of the purchase, and since Coon Creek did not have a public school the Armers remained in Tempe. Lillian hoped that with the addition of her four children in the Coon Creek area, a public school would be established there the following year (1962–63).

In the spring of 1962, Charles approached Lillian and requested that his mother, who was approximately 75 years of age at the time, be permitted to move permanently onto the Coon Creek property. Lillian had no objection, particularly since the Armer family was still living in Tempe. Later that year, Charles asked Lillian to sign a quit claim deed transferring their interest in Coon Creek to Mrs. Hill. Charles told Lillian that the express purpose of such a deed was to allow Mrs. Hill to have a place to live should both Charles and Lillian be killed in a common accident, and he further explained that the deed would not be notarized, would be placed in the Armer's safe-deposit box, and would not be delivered to Mrs. Hill except in the event that both he and Lillian were killed. Relying on these representations, Lillian signed the quit claim deed.

Subsequently, Charles signed the deed and had it notarized, turned it over to his mother, and on December 16, 1964, the deed was recorded in Gila County. Lillian was unaware of any of these events, and at all times believed the property to be the community property of herself and her husband.

The trial court's findings of fact included: "That at no time prior to the payment of the balance due (on the ranch property) did the defendant Gertrude Hill

place any restriction, oral or written, on the payment or have any understanding that it was a loan or that there should be repayment, but rather it was her intention to make a gift of the money to her son Charles and daughter-in-law Lillian Armer." In its conclusions of law, the court enumerated:

"1. That the Coon Creek property was acquired by CHARLES and LILLIAN ARMER by reason of a valid and completed gift from Mrs. HILL to them.

2. That the parties CHARLES and LILLIAN ARMER held this property as tenants in common, and not being community property, it is separate property and either party could convey his or her interest to a third party.

3. That the actions of the defendant CHARLES ARMER and the subsequent actions of the defendant CHARLES ARMER, confirmed his intentions to convey his ownership interest in the Coon Creek property to the defendant GERTRUDE HILL.

4. That the defendant GERTRUDE HILL obtained the interest of LILLIAN ARMER through the fraudulent actions of herself and her agent, CHARLES ARMER.

5. That the defendant HILL holds an undivided one-half (½) interest in the Coon Creek property as her sole and separate property, and the defendant HILL holds the remaining one-half (½) interest in the said property in trust for the plaintiff, Lillian Armer and that she should be required to reconvey the same to plaintiff."

In its judgment, the trial court ordered that the portion of the quit claim deed conveying Lillian's ½ interest in Coon Creek was null and void, and that Mrs. Hill held Lillian's interest in the property in trust for Lillian.

Defendant, Charles Armer, challenges the trial court's findings, conclusions and judgment as follows: (1) That the court improperly awarded certain separate property of Charles to Lillian; (2) that Lillian was not entitled to an award of her reasonable attorney's fees; (3) that the court erroneously failed to specify Charles' visitation rights with respect to his children; (4) that Lillian failed to properly plead and prove actionable fraud against Charles as to the Coon Creek quit claim deed; (5) that the trial court's finding that Mrs. Hill gave Charles and Lillian a gift of money was not supported by law or fact. Defendant Mrs. Hill joins Charles in asserting contentions #4 and #5.

## I. THE COURT'S DISPOSITION OF THE PARTIES' COMMUNITY PROPERTY.

In its judgment, the trial court declared certain property to be part of the community estate of Charles and Lillian and divided that property between the two parties. Included in Lillian's share of the community property was five acres of unimproved property near the Black Canyon Highway in Maricopa County, and "all of the clothing, jewelry, furniture, appliances, dishes, utensils, fixtures, linens, bedding, equipment and houshold effects" then in Lillian's possession at the family home in Tempe. Charles contends that the Black Canyon property, as well as some of the household effects, were his separate property and not part of the community estate.

It has long been the law in Arizona that property acquired by either spouse during coverture, whether taken in the name of husband or wife, is prima facie community property. In re Torrey's Estate, 54 Ariz. 369, 95 P.2d 990 (1939). Such a presumption is rebuttable, but only by clear and convincing evidence. Smith v. Smith, 71 Ariz. 315, 227 P.2d 214 (1951). When the character of property as separate or community is once fixed, the property retains such character until changed by agreement of the parties or by operation of law. Porter v. Porter, 67 Ariz. 273, 195 P.2d 132 (1948).

■ The Black Canyon property was acquired during the 1950's. Originally it was acquired in the names of both Charles and Lillian, but in order to take advantage of Charles' Veterans' Exemption from property taxation, Ariz.Const. Art. 9, § 2, A.R.S., Lillian executed a quit claim deed of the property to Charles. However, nowhere in his responsive pleadings did Charles ever object to Lillian's claim that the Black Canyon property was community. Rather, in his answer to Lillian's complaint, Charles admitted that the Black Canyon parcel was community property. By the pleadings alone, defendant Charles Armer precluded himself from any subsequent objection to the characterization of the property as community.

■ Even if Charles' objection had been timely, however, the Black Canyon parcel would still be properly designated as community. Lillian's quit claim deed of the parcel cannot be reasonably considered a gift of her interest, but was merely undertaken for tax purposes. Without a clear intention on the part of Lillian to alienate her interest, the original character of the property, presumed to be community, would remain unchanged.

■■ As to the household effects which were a part of the Tempe home, Charles did not designate to the trial court any specific items contained therein which were his separate property. The trial judge validly presumed that all of the property contained in the house was community, and we cannot say that such a finding was clearly erroneous. Parties are bound by their pleadings and evidence may not be introduced to contradict or disprove what has been admitted or asserted as fact in their pleadings, and a party may not introduce evidence in contradiction of express allegations of his complaint. Adams v. Bear, 87 Ariz. 288, 350 P.2d 751 (1960).

Charles' final contention as to the trial court's community property disposition is that such property was distributed inequitably, that the trial court abused its discretion in making such a property division. We do not agree.

■ It is well founded that the trial court is not bound to make an absolute 50/50 distribution of the community property as long as it does not appear that the trial court's disposition of the community estate is unfair or inequitable. Schwartz v. Schwartz, 52 Ariz. 105, 79 P.2d 501, 116 A.L.R. 633 (1938). The trial court has wide discretion as to what portion should be awarded to each party. Schwartz v. Durham, 52 Ariz. 256, 80 P.2d 453 (1938). The trial court divided the community property as follows:

To Lillian:

| | | |
|---|---|---|
| 1. | The Tempe home, with an equitable value of | $5,000 |
| 2. | The Black Canyon parcel, worth | 2,500 |
| 3. | The household effects, valued at | 6,000 |
| 4. | An outstanding note payable to Charles and Lillian, worth | 4,100 |
| 5. | A 1965 Rambler automobile (value not recorded) | |

To Charles:

| | | |
|---|---|---|
| 1. | A leasehold property at Cherry Creek, Ariz., worth approx. | $ 500 |
| 2. | A 1962 Chevrolet truck (value not recorded) | |
| 3. | All other community property not otherwise mentioned (value, if any, unknown) | |

---

In addition, Lillian was awarded alimony of $1 per year and child support of $200 per month.

■ In Britz v. Britz, 95 Ariz. 247, 389 P.2d 123 (1964), a wife in a divorce proceeding was awarded community property,

worth $15,260, while the husband's share was only $240. Noting that the record should be viewed in the light most favorable to the judgment of the trial court, we held that such a distribution of the community estate was not an abuse of discretion, particularly where the wife's precarious state of health would likely necessitate future medical expenses and severely limit her earning power. In our present case there was evidence as to Lillian's poor physical health, which impaired her earning power, and Charles' proclivity for extensive periods of unemployment. In light of such evidence, and the fact that Charles was held to be guilty of cruel and inhuman treatment toward Lillian, we cannot say that the trial court's distribution of the community estate was unfair or inequitable.

## II. THE COURT'S AWARD TO LILLIAN OF REASONABLE ATTORNEY'S FEES.

A trial judge has broad discretion to award attorneys' fees in a divorce action. Kennedy v. Kennedy, 93 Ariz. 252, 379 P.2d 966 (1963). The trial court awarded Lillian $250.00 with which to pay her attorney. In view of the fact that this case involved numerous issues of fact and law, we do not think that the award of attorneys' fees was excessive and hence an abuse of discretion.

## III. THE COURT'S ORDER CONCERNING VISITATION RIGHTS FOR CHARLES.

The granting of visitation rights is another matter in which the trial court enjoys broad discretion. This is because the trial judge is in the most favorable position to determine what is best for the children. Galbraith v. Galbraith, 88 Ariz. 358, 356 P.2d 1023 (1960). Unless it clearly appears that the trial judge has mistaken or ignored the evidence, a reviewing court will not disturb the lower court's decision. 88 Ariz. at 362, 356 P.2d at 1026.

The judgment of the trial court included the following pronouncement: "That the defendant, Charles Armer, shall have the right of visitation with said children at reasonable times and places." On appeal defendant Charles contends that the court's order as to visitation rights was incomplete because it "merely granted reasonable visitation instead of specifically settling the matter on the extent of the visitation rights." We do not agree with defendant that such was an abuse of the court's discretion.

Charles was granted "reasonable" visitation rights. Until and unless problems subsequently arise concerning Charles' right of reasonable access to his children, we cannot say that the trial court's pronouncement was improper or erroneous. The trial court has continuing jurisdiction to alter, specify and enforce Charles' visitation rights as the circumstances require. Charles' rights are not impeded by the trial court's order.

## IV. THE COURT'S CONCLUSION THAT MRS. HILL MADE A GIFT OF MONEY TO CHARLES AND LILLIAN.

As explained above, the trial court found that in paying for the Coon Creek property, defendant Mrs. Hill intended "to make a gift of the money to her son Charles and her daughter-in-law Lillian Armer." A review of the evidence, in a light most favorable to the trial court's finding, supports this conclusion.

To constitute an inter vivos gift, there must be donative intent, delivery, and the vesting of irrevocable title upon such delivery. Scoville v. Vail Investment Co., 55 Ariz. 486, 103 P.2d 662 (1940). Less evidence is required to establish a gift from a parent to a child than from a stranger to a stranger. Stewart v. Damron, 63 Ariz. 158, 160 P.2d 321 (1945).

Lillian and Charles purchased the Coon Creek ranch as husband and wife, and their names appear on the deed, the bill of sale, and the escrow instructions. Nowhere in these documents does Mrs. Hill's name appear, nor is there any expressed reservation in which Mrs. Hill asserts an interest

in the property. At no time during the consummation of the transaction did Charles or Mrs. Hill represent to Lillian that Mrs. Hill was supposed to be the true purchaser, or that Charles and Lillian were the named purchasers merely for convenience.

As further evidence that Charles intended the property to be for himself and Lillian, Charles co-signed for a $7,500 bank loan which was used to pay part of the purchase price of the ranch. Mrs. Hill was the other co-signer of that loan, which was secured by a pledge of her stock. Eventually Mrs. Hill paid off the balance of the loan, prior to the time that Lillian was induced to sign a quit claim deed to the Coon Creek ranch.

■ Mrs. Hill's own testimony at trial provided the requisite donative intent to establish an inter vivos gift. When asked on cross-examination whether she intended to make a gift to both Charles and Lillian, she responded: "Yes, I intended to let them have it (the ranch), but it was understood that I was to live there." (RT 177). The payment of some $20,000 due on the ranch mortgage constituted the requisite delivery, for Charles and Lillian already had title to the property, and nowhere did Mrs. Hill indicate that the purchase payments were a loan or had any other strings attached. The gift of money was irrevocable, in that title to the property was in the name of Lillian and Charles, and the money, once paid, was not redeemable. We hold that the trial court's conclusion that a gift of money passed from Mrs. Hill to Charles and Lillian is supported by the evidence.

## V. THE COURT'S CONCLUSION THAT CHARLES AND MRS. HILL FRAUDULENTLY OBTAINED A QUIT CLAIM DEED FROM LILLIAN.

Mrs. Hill testified at the trial that her son acted as her agent at all times during the transactions concerning the Coon Creek property. This agency included Charles' action of obtaining a quit claim deed to Coon Creek from Lillian. Mrs. Hill's subsequent receiving of the deed and the recording of it, as well as her seeking to have the deed enforced in court, ratified the actions of her agent son, Bailey v. Kuida, 69 Ariz. 357, 213 P.2d 895 (1950), and made them her own.

■ Defendants argue that the trial court erred in finding fraud in the obtaining of the quit claim deed to Coon Creek because (a) the nine elements of fraud were not specifically pleaded below, and (b) Lillian failed to prove every element of fraud at trial. We have previously held that a failure to directly plead all the elements of fraud is not reversible error if all the elements are proved at trial by clear and convincing evidence. Cullison v. Pride O'Texas Citrus Association, 88 Ariz. 257, 355 P.2d 898 (1960).

Lillian's complaint alleged that "the defendant Charles Armer, fraudulently induced and coerced plaintiff to sign a quit claim deed conveying the (Coon Creek) property to Gertrude Hill." We do not find it necessary, however, to determine whether Lillian proved the nine elements of fraud at trial. For whether or not fraud was sufficiently proved, we hold that Charles, acting as agent for both the community and for his mother, performed an unauthorized delivery of the Coon Creek deed when he had the quit claim deed notarized, delivered to Mrs. Hill, and recorded without his wife's consent.

■ As previously indicated, all property acquired by either spouse during coverture is presumed to be community property. Since Charles and Lillian purchased the ranch as husband and wife, and since nothing was done subsequently to change the character of the property, the Coon Creek ranch was part of the community estate of Charles and Lillian. In Arizona, the husband is recognized as the head of the family, and its agent in control and management of the community estate. Fee v. Arizona State Tax Commission, 55 Ariz. 67, 98 P.2d 467 (1940). While the husband has the entire management of the community during coverture, he may not encumber or dispose of community realty

without his wife's consent and signature, and must act at all times for the benefit of the community. Greer v. Goesling, 54 Ariz. 488, 97 P.2d 218 (1940). There is no statutory or implied agency on the part of the husband to dispose of community realty. Rundle v. Winters, 38 Ariz. 239, 298 P. 929 (1931). Charles, as agent of the community, had no authority to alienate any interest in the Coon Creek property without Lillian's consent. Lillian had affixed her signature to the quit claim deed only on the representation by Charles that the deed would not be notarized, that it would be put in their safe deposit box, and that it would only be delivered to Mrs. Hill in the event that Lillian and Charles were killed in a common accident. The subsequent notarization of the deed, its delivery to Mrs. Hill, and the deed's recordation were unauthorized, nor did Lillian ever ratify such actions by her husband. Lillian explained at trial that she never would have signed the quit claim deed had she known that it meant alienating her interest in the property. She also rightfully believed that she and Charles were the true owners of the property. Since the delivery of the deed to Mrs. Hill never had Lillian's consent, we hold that such delivery was void.

## VI. THE COURT'S CHARACTERIZATION OF THE COON CREEK PROPERTY.

We cannot agree with the trial court's findings of fact, conclusions of law, and judgment in one other respect, wherein the court concluded that Charles and Lillian held the Coon Creek property as "tenants in common," and that therefore either party could convey his or her interest to a third party. Relying on that conclusion, the trial court nullified only that portion of the quit claim deed conveying Lillian's interest to Mrs. Hill, and held that Charles legally conveyed a one-half interest in the property to his mother. We hold that the entire quit claim deed conveying the Coon Creek ranch to Mrs. Hill is null and void, and that the Coon Creek ranch·remains part of the community estate of Charles and Lillian. We

further hold that Mrs. Hill has no interest in the property, except that she presently holds the entire ranch in trust for Charles and Lillian.

Accordingly, we reverse that part of the trial court's judgment declaring that defendant Mrs. Hill holds an undivided one-half interest in the Coon Creek ranch as her sole and separate property. Further, we remand this case to the trial court for division of the Coon Creek property between Charles and Lillian as part of the community distribution, according to the best judgment of the trial court and the law of this state. The remainder of the trial court's judgment is affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL, J., concur.

McFARLAND, J., did not participate in the determination of this matter.