716 P.2d 1037

**Barbara E. DAVIS, Petitioner/Appellant,**

v.

**William M. DAVIS, Respondent/Appellee.**

**No. 2 CA–CIV 5406.**

Court of Appeals of Arizona, Division 2, Department A.

Nov. 27, 1985.

Reconsideration Denied Dec. 26, 1985.

Review Denied April 1, 1986.

See also 143 Ariz. 54, 691 P.2d 1082; 143 Ariz. 74, 691 P.2d 1102.

---

Wolfe & Ostapuk, Chartered by David K. Wolfe and David R. Ostapuk, Tucson, for petitioner/appellant.

Stompoly & Even, P.C. by James L. Stroud and Leslie J. Cohen, Tucson, for respondent/appellee.

## OPINION

FERNANDEZ, Judge.

The wife in this dissolution action has appealed the granting of a partial summary judgment which declared 270 shares of stock in a Virginia corporation to be the husband's separate property. The wife contends summary judgment was improper because there is a fact question as to whether the stock transfers were remuneration for services rendered to the corporation. We agree with the trial court that there is no genuine issue of material fact and affirm.

The parties were married in 1969, and the petition for dissolution was filed in mid-1981. The husband is a vascular surgeon in Tucson. In 1973 he took on the added position of medical director of William P. Poythress & Company, Inc., a company located in Virginia. This was a part-time position which he fulfilled primarily by means of correspondence. He received $1,000 a month compensation for the position. The corporation produces pharmaceutical products and operates a 5,000 acre cattle breeding farm. It was run for more than 50 years by Dr. Aubrey Houser, who became the husband's stepfather in 1977. The husband's mother was Dr. Houser's secretary for 50 years.

In August 1976, Dr. Houser transferred 199 shares of voting stock (there are 500 total voting shares in the corporation) to the husband. The stock certificate is in the husband's name alone, and a gift tax return was filed by Dr. Houser, showing the husband as the sole donee. In January 1978, some three-and-a-half months after Dr. Houser married the husband's mother, she transferred 71 shares of voting stock to the husband. The stock certificate shows only the husband's name. A letter was sent from Dr. Houser to the husband at the same time which stated the following:

"Mrs. Sue G. Houser has turned over to me today seventy-one (71) shares of her Class 'A' Capital Stock that has been transferred to you.

"You now have in your possession fifty-four percent of all Class 'A' stock, making the Poythress business distinctly your business. You do not have to ask anybody for anything.

"I am happy to see this condition stabilized while I am here to observe. I will write you again in a few days giving some suggestions for you to contemplate in arranging your new program. I feel the destiny of the Poythress enterprise is secure."

The close of the letter was "[f]ondly." The husband's mother testified in her deposition that she gave the stock to her son because Dr. Houser wanted him to have the controlling stock in the corporation.

Mrs. Houser testified that her first husband died in 1952 when her son was 16 and that her son had spent summers working on Dr. Houser's farm while he was in high school. Dr. Houser's first wife died in 1975 or 1976, and he had six children by her. Mrs. Houser testified her son and Dr. Houser (who died after the petition for dissolution was filed) had a close relationship.

There was evidence that Dr. Houser had had a trust agreement drawn up in 1973 which provided that his 200 shares of stock were to be transferred to the husband upon Dr. Houser's death. A letter of September 21, 1973, from Dr. Houser to the husband, which enclosed a copy of the trust agreement, indicated that Dr. Houser expected to pay a gift tax as a result. He also stated, "I do not want you to regard this as a philanthropy, but that you are the only person of my acquaintance that I have confidence in to guide the destiny of both institutions that you and I have put so much sweat into." The trust agreement was apparently never executed. The husband is now president and chairman of the board of the corporation, having apparently obtained these positions after the stock transfers.

■ Property acquired by each spouse during marriage is community property except for property acquired by gift, devise or descent, and the increase in value of such property. A.R.S. § 25–211. There is a strong presumption that property acquired during marriage is community. *Cockrill v. Cockrill*, 124 Ariz. 50, 601 P.2d 1334 (1979); *Armer v. Armer*, 105 Ariz. 284, 463 P.2d 818 (1970). That presumption can only be overcome by clear and convincing evidence. *Cockrill v. Cockrill*, supra; *Blaine v. Blaine*, 63 Ariz. 100, 159 P.2d 786 (1945). That presumption was overcome here.

■ We note that less evidence is required to establish that a transfer from a parent to a child is a gift than is a transfer between strangers. *Armer v. Armer*, supra; *Stewart v. Damron*, 63 Ariz. 158, 160 P.2d 321 (1945). The evidence here showed that the husband's mother conveyed to the husband 71 of the 72 voting shares of stock she held. She stated she did so because Dr. Houser wanted the husband to have controlling interest in the company. The letter he sent to the husband at the same time confirms that intent. There was no evidence she was not in agreement with that intent. She had acquired the shares long before she married Houser and thus was not obligated to transfer them unless she wanted to.

The evidence with regard to the transfer from Dr. Houser showed that it was also a gift transaction. Dr. Houser filed a gift tax return and paid a gift tax of $448.00 in connection with the transfer. Although he was not then the husband's stepfather, the husband's mother testified the two had had a close relationship since the husband had been in high school. There was no evidence to the contrary.

The wife contends that the transfers were remuneration for services rendered the corporation. Mrs. Houser testified the husband was paid $1,000 per month for his services as medical director. She indicated he was able to perform most of these duties by correspondence from Tucson. The wife produced no evidence that this was insufficient compensation for those services. Mrs. Houser testified he has not received any stock as compensation for his services nor does the corporation have a stock option plan for any of its employees.

The following discussion on remuneratory gifts is applicable here:

"Thus, where the gift is actually remuneratory of services rendered or to be rendered by one spouse, and such services are at the expense of the community, for example in that they represent the expenditure of labor and industry and time to which the marital partnership is entitled and which in other channels

would have advanced the interests of the marital partnership, it is clear that the remuneratory gift is the equivalent of any other property earned through labor and industry and is community property. This should be true even where the donor is not obligated to make the remuneratory gift. On the other hand, a gift which, although in recognition or appreciation of some individual merit, is actually in the nature of a simple gift inspired by charity, affection, liberality or the like, is undoubtedly the separate property of the one to whom it is given. The first is acquired by onerous title, the latter by lucrative title. But if the remuneratory gift apparently given, without compulsion, in reward of services is so in excess of the value of the services as to indicate that it is inspired by liberality rather than to remunerate the actual value of the services, it should be considered that the gift falls into the class of a pure donation." W. DeFuniak and M. Vaughn, Principles of Community Property § 70 at 159–160 (2d ed. 1971).

The financial report of the corporation of December 31, 1979,[1] shows assets of $1,248,350. The wife contends that the assets are actually much greater than reflected because of the way the farm land was valued. Even if the lower figure is correct, it is obvious that the value of 270 voting shares of stock out of a total of 500 is substantially more than the value of part-time services rendered primarily by correspondence and compensated at the rate of $12,000 per year. There is no evidence the stock transfers were merely additional compensation for services rendered by the husband or that they were in the nature of a Christmas bonus, as was the case in *Holby v. Holby*, 131 Ariz. 113, 638 P.2d 1359 (App.1981). We particularly find no evidence of a remuneratory gift for services rendered to the corporation in transfers of stock directly from officers and shareholders of the corporation, rather than from the corporation itself.

The wife also contends that she provided services to the corporation over the years, which somehow makes the transfers community remuneratory gifts. Her evidence was that she made three to four trips a year to Virginia with the husband. No purpose was shown for these trips nor was there any indication that the wife performed any services for the corporation during them. We note, by the way, that her mother-in-law also resided in Virginia. The only other service listed which might have occurred prior to the stock transfers was a trip to Europe by both husband and wife for the purpose of meeting with representatives of a German corporation. The wife apparently served as translator for some of that meeting. There is no evidence that she was requested to perform this service or that it provided any benefit to the corporation. Her other listed services occurred in 1978 (there is no indication whether that was before or after the January 11 stock transfer) and in 1980, two years after the last transfer. The evidence does not support the wife's assertion that the stock transfers were intended to be to her as well because of services she rendered the corporation.

The wife stated in her affidavit that Dr. Houser told her that he placed a great deal of trust in her and that he knew she was an intelligent person who knew animals and a great deal about the Poythress farm operation. She stated that he never said he "had a state of mind prohibiting [her] having any ownership or community property interest in Poythress." These statements are insufficient to raise a fact issue as to the stock transfers.

The wife has also raised an issue regarding the purchase of non-voting stock by the husband. Since the trial court denied summary judgment as to that issue, we do not address it. *Fernandez v. Garza*, 93 Ariz. 318, 380 P.2d 778 (1963).

---

1. We have not been provided a statement of assets and liabilities for the periods in which the stock transfers were made.

Since we agree with the trial court that the wife failed to raise an issue of material fact, we affirm the partial summary judgment that the stock is the husband's separate property. Appellant is awarded attorney's fees in the amount of $10,000 as well as costs incurred on appeal pursuant to Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S., and A.R.S. § 25–324.

BIRDSALL, P.J., and HOWARD, J., concur.