*Glenda DAMON*
Appellant
*vs.*
*Cecelia DAMON, et al.*
Appellees

In the Supreme Court of the Navajo Nation

No. SC-CV-25-01

June 3, 2002

Samuel Pete, Esq., Shiprock, New Mexico, for Appellant.

Gerri Harrison, Esq., Window Rock, Arizona, for Appellees.

Before KING-BEN, Acting Chief Justice, and MORRIS and BENALLY, Associate Justices.

Opinion delivered by KING-BEN, Acting Associate Justice.

This case was heard by the Window Rock District Court on February 12, 2001

and the district court concluded that an *inter vivos* gift was not completed. This is a controversy over ownership of a 1974 General mobile home, allocated on the appellant, Glenda Damon's (Glenda) homesite lease.[1] Appellant claims that she is the rightful owner of the mobile home in question and is asserting ownership by virtue of an alleged gift from her deceased husband's father who is also deceased. The sole question is whether the plaintiff, Cecelia Damon's late husband, Benjamin F.W. Damon, Sr. (Damon, Sr.) conveyed the mobile home as a gift *inter vivos* to the appellant sometime prior to his death in December 1994. The appellant claims that the question before this Court is the application of the law and therefore no transcript of the trial court was filed.[2]

Cecelia Damon (Cecelia) and Damon, Sr. bought a mobile home sometime in 1976. The mobile home was titled Benjamin F. W. Damon, Sr. OR Cecelia R. Damon. Cecelia and Damon, Sr. separated in 1989 and around that time, their son, Malcolm Damon (Malcolm), married the appellant, Glenda Damon. In 1991, with Damon's permission, Malcolm, Glenda, and their children moved into the mobile home, appellant and her four children presently live in the mobile home and have resided there since 1991. Prior to the renovation, the mobile home was vacant and severely deteriorated requiring extensive repairs. Appellant introduced photographs of the construction of the addition to the 1974 mobile home and the renovation of the mobile home. With Damon, Sr.'s financial assistance, and assistance from the Navajo Nation Weatherization Program,[3] the mobile home was repaired and renovated.

Between 1989 and 1993, Damon, Sr. often spent time with his son, Malcolm and his family. During this time, Damon, Sr. spoke about conveying possession of the mobile home to Malcolm and his family. Malcolm was killed in an auto accident on January 26, 1993. After Malcolm died, Damon, Sr. often spent time with Malcolm's children and spoke of conveying the mobile home to Glenda and her children. He openly declared that the mobile home was the property and home of his son Malcolm and his children.[4] However, Damon, Sr. died on

1 The homesite lease is within the St. Michaels Chapter of the Navajo Nation. Pursuant to a letter dated October 11, 2000, from Alfred Dehiya, Director of the Navajo Land Department, to Judge Allen Sloan. the appellant filed an application for a homesite lease on May 18, 1998, the land survey was conducted on June 23, 1998, and the homesite lease was finalized on November 17, 1998.

2 The appellant filed a record with this court but no transcript of the district court proceedings was filed. The appellant apparently decided to forgo submitting the transcript as she states on page two of her brief, "this appeal is on a question of the application of law and therefore, a transcript of the hearing is not provided."

3 There is a copy of a "Weatherization Project Construction Schedule FY 1994" in the record filed with this Court on July 25,2001. The Projecting Listing lists Glenda Damon with the amount of the PO which is $1,297.46. This document is marked as "Defendant's Exhibit H."

4 *See* page six of the Appellant's Opening Brief.

December 4, 1994, without formally conveying title, rights and interest in the mobile home to Glenda Damon.

The dispute over ownership of the mobile home arose in 1999 after Cecelia registered the mobile home in her name. Although Damon Sr.' s property had been probated, there is no evidence in the record or in the probate decree that the 1974 General mobile home was one of the properties probated. There is no mention of the property being awarded to the appellant or the appellee. However, a double-wide Palm Harbor mobile home was awarded to the appellee, Cecelia Damon, by the probate decree.[5] The fact that the mobile home was not listed as one of the properties owned by Damon, Sr. and thereby requiring probate favors the appellee.

I

The question before this court is whether a gift *inter vivos* was made where Damon, Sr. stated he gave the mobile home to his son and his family and where the legal title was never transferred to Malcolm or his wife, the appellant. To constitute an *inter vivos* gift, there must be donative intent, delivery and the vesting of irrevocable title upon such delivery. *See In the Matter of the Estate of Joe Dee Nelson*, 1 Nav. R. 162 (Nav. Ct. App. 1977), citing *Scoville v. Vail Investment Co.*, 55 Ariz. 486, 103 P.2d 662 (1940) and *Armer v. Armer*, 105 Ariz. 284,463 P.2d 818 (1970). *See also Espinosa v. Petris*, 70 N.M. 327, 373 P.2d 820 (1962).

Looking first to the issue of donative intent, it appears that such intent to make a gift to the Appellant is lacking. From February 18, 1976 to April 6, 1989, the mobile home was titled "Benjamin F.W. Damon, Sr., OR Cecelia R. Damon." However, on April 6, 1999, the Motor Vehicle Division of the State of Arizona transferred title to "Cecelia R. Damon." There is no evidence that Ben, Sr. took any action to transfer legal title to the mobile home to his son Malcolm or to the appellant at any time prior to his death. There is no evidence that a bill of sale or transfer was completed. In an attempt to overcome the trial court's finding that a gift *inter vivos* was not made, the appellant contends that the mobile home in this case is not movable and therefore the law requiring a transfer of title does not apply.

"Delivery" comprehends any acts or conduct of the donor which a court will regard as legally sufficient to manifest an intention to transfer ownership from donor to donee. Not every manifestation of intent to transfer ownership is regarded as legally sufficient. In this case, the mobile home is parked on the appellant's homesite lease and at first glance it would appear that delivery is complete. However, to complete the gift, the title to the mobile home should have been transferred. This Court has stated that, in order to make a valid gift, there must be a delivery amounting to present transfer of title. *In the Matter of the*

5 According to the Appellant's Opening Brief, Benjamin F. W. Damon, Sr.'s estate was settled by entry of a Probate Decree on May 2, 1995 *In the Matter of the Estate of Benjamin F.W. Damon, Sr.*, Cause No. WR-FC-577-94.

*Estate of Joe Dee Nelson*, 1 Nav. R. 165 (Nav. Ct. App. 1977), *Blonde v. Jenkins Estate*, 131 Cal. App.2d 682, 281 P.2d 14. Since a bill of sale or transfer was never completed, there was no transfer of title and therefore no delivery. As the rule requiring delivery is clearly subject to exceptions, in order to apply it correctly in varying circumstances resort should be had to the reason for the rule. Under the civil law delivery was not requisite to a valid gift, but it was made a requisite by the common law as a matter of public policy to avoid mistake, fraud and so forth. In the case of mobile homes, one often allows others to reside or use the property without intending to complete a gift, so a more formal measure of delivery is helpful.

Based upon decisions in numerous other jurisdictions, it is stated that the general rule is that a gift of property evidenced by a written instrument executed by the donor is valid without a manual delivery of the property. A gift has been judicially defined as a voluntary transfer of property by one to another, without any consideration or compensation. In this case, the appellant and her late husband and children lived in the mobile home for three years prior to her husband's death. Thereafter, the appellant and her four children continued to reside in the mobile. While Glenda and her husband lived in the mobile home, they made improvements to make the mobile home habitable. The appellee apparently did not claim the mobile home when the property was probated and furthermore did not list the mobile home in issue as property to be probated.[6]

Although there appears to have been a delivery of the mobile home to the appellant and her late husband, a gift *inter vivos* has no reference to the future. Here we have statements made evidencing a gift in the future. Glenda claims that Damon, Sr. often remarked that he would give the mobile home to his grandchildren and based on that belief made improvements to the mobile home. There was actual possession as the mobile home was parked on Glenda's homesite lease; but legal title was never obtained as the mobile home was registered in Cecelia and Damon, Sr.'s names.

A gift is a voluntary transaction without consideration. Until the donor has divested himself absolutely and irrevocably of the title, dominion, and control of the subject of the gift, he has the power to revoke, and a court of equity will not compel him to complete his gift. The mobile home was not only registered in Damon, Sr.'s name but also in his wife Cecelia's name. To make the transfer complete, Damon, Sr. could have alone made the transfer of legal title as the title provided, "Benjamin F. W. Damon, Sr., OR Cecelia R. Damon." Here, Damon, Sr. died prior to transferring legal title to the mobile to Glenda Damon and upon his death, Cecelia had the mobile home title transferred to her.

---

6 The probate decree was entered on May 2, 1995 does not list the mobile home in dispute. *See In the Matter of the Estate of Benjamin F. Damon, Sr.*, Cause No. WR-FC-577-94.

## II

In an attempt to overcome the court's finding that a gift *inter vivos* was not made, the appellant raises three issues as to why the mobile home should be awarded to her. First, she questions whether a mobile home is considered a "motor vehicle" requiring a title to transfer it. Secondly, appellant Glenda asserts that the children's best interest should have been considered in determining whether there was a "gift *inter vivos*," and finally, whether the laches and the statute of limitations should bar appellee Cecelia Damon's claim to the mobile home. We will not address the issues of whether laches or the statute of limitations or the best interests of the children apply as the appellant appealed this case on a question of the application of the law and therefore did not provide a transcript of the case.[7] However, we do need to determine whether the mobile home is subject to transfer of a title for a gift *inter vivos* to be completed.

The ability of one to convey ownership of property depends upon whether the conveyor holds title and ownership to the property at the outset. A mobile home is a motor vehicle and considered personal property as opposed to real property. Ownership of a motor vehicle, subject to liens, is ordinarily defined by a certificate of title issued by the state motor vehicle division.[8] That is, the motor vehicle division and most adjudicatory tribunals equate title with ownership. In the case at bar, there is no question that both Cecelia and Ben, Sr. owned the mobile home prior to the issue of ownership was raised before the trial court.

Finally, in following the strict letter of the law, a gift *inter vivos* was not completed. To constitute a gift *inter vivos*, it is essential that there be a donative intent, that the gift be executed by delivery and that it vests an irrevocable title upon such delivery. *Scoville v. Vail Inv. Co. et al.*, 55 Ariz. 486, 103 P .2d 662 (1940). There is no evidence that there was a transfer of title of the mobile home to the appellant. Our decision appears harsh and contrary to the Navajo concept of ke' as we are displacing the appellant and her children. However, gifts asserted after the death of an alleged donor are always regarded with suspicion as a fraudulent claim of ownership could be made and therefore we take precaution which requires explicit and convincing evidence that every element of a valid gift *inter vivos* is made. In the future, disputes over legal ownership of property can be avoided by effectuating transfers of title to property and we encourage parties to do so.

The judgment is affirmed.

---

7 *See* page two of the Appellant's Opening Brief filed with this Court on September 26, 2001.
8 Title 28 of the Arizona Revised Statutes §28-2063 provides, "the issuance of a certificate of title for a mobile home shall be provided by law for titling motor vehicle..."