OPINION

YAZZIE and FERGUSON filed the opinion of the Court.
This is an appeal from a decision of the Window Rock Family Court in a quiet title action. We reverse the judgment of the Family Court granting the grazing permit to Tom Attakai and order the Family Court to issue the grazing permit to Riggs, but affirm that part of the Family Court’s decision that the permit is to be held in trust for the daughters of Mary Lou and Phillip Attakai.
I
The Court applies the following facts in deciding the case. When Mary Lou Atta-kai was 15 years old, her maternal grandfather, Paddock, gave her Grazing Permit No. 7-58, for 66 sheep units within District 7. The grazing permit was actually used by Mary Lou’s mother and sisters, including Sista Riggs when Mary Lou moved away to other areas.[2] Sista Riggs has a separate permit she received as a result of a peacemaking after her mother’s death. She currently holds that permit as trustee for her brothers and sisters. Mary Lou for some years moved out of the family’s area with her husband and children.[3] Later, Mary Lou and her family moved back to the Castle Butte area where she received a home site lease and where she remained until her death on December 22, 1993. Seven years after her death, when no probate petition was filed, Riggs filed a quiet title action requesting that the grazing permit be transferred to her. Phillip Attakai, surviving spouse of Mary Lou, and Tom Attakai filed an answer claiming title when the quiet title action was filed. Tom Attakai died before the Family Court issued its decision.
II
The question before this court is whether the Family Court erred in its determination when it granted the grazing permit to Tom Attakai without applying Navajo customs and traditional practices, and without considering Navajo Nation policies as acknowledged by this Court in prior quiet title actions. The Family Court concluded that Tom Attakai, being the son of *536 Mary Lou, was of the same elan as Mary Lou, and that granting the permit to him would satisfy the wishes of the maternal grandfather Paddock to keep the permit within the clan by indicating the grazing permit “be used for the family.” The Family Court reasoned that the traditional practice of maintaining the permit within the clan would be satisfied and that although Tom did not live in the area covered by the grazing permit, by awarding him the permit would give him and his sisters a “sense of home.”
In Begay v. Keedah, 6 Nav. R. 416, 421 (Nav.Sup.Ct.1991), this Court acknowledged the following Navajo Nation policies gleaned from Navajo statutes to be considered when determining the award of a grazing permit: 1) animal units in grazing permits must be sufficiently large to be economically viable, 2) land must be put to its most beneficial use, 3) the most logical person should receive land use rights, 4) use rights must not be fragmented, and 5) only those who are personally involved in the beneficial use of land may be awarded it. Id. The Court now holds that these factors are to be considered and applied consistent with the Navajo Fundamental Law which defines the role and authority of Diñé women in our society. Traditionally, women are central to the home and land base. They are the vein of the clan line. The dan line typically maintains a land base upon which the clan lives, uses the land for grazing and agricultural purposes and maintains the land for medicinal and ceremonial purposes. The crucial role of women is expressed in the principles established by White Shell Woman and are commonly referred to as Yoolgaii Asdzáán Hi Beehazáami. These principles include liná Yésdáhí (a position generally encompassing life; heading the household and providing home care, food, clothing, as well as child bearing, raising, and teaching), Yódí Yésdáhí (a position encompassing and being a provider of, a caretaker of, and receiver of materials things such as jewelry and rugs), Nitl’iz Yésdáhí (a position encompassing and being a provider of and a caretaker of mineral goodness for protection), Tsodizin Yésdáhí (a position encompassing spirituality and prayer). This is why the women are attached to both the land base and the grazing permits. For the most part, Navajos maintain and carry on the custom that the maternal clan maintains traditional grazing and farming areas.
Because they are keepers of the clan line and land base, Navajo women are often the most logical persons to receive land use rights to hold in trust for the family. They are also the ones who are burdened with putting the land base to its most beneficial use by managing the herd and the land upon which the herd graze for the benefit of the clan group. This means that keepers have to balance the number of sheep units with the size of the land base, making sure the land base remains compatible, sustainable and feasible for sufficient continued beneficial use. Overgrazed land cannot be put to beneficial use. This practice is consistent with preserving a large area by discouraging the fragmentation of grazing permits and the land base.[4] The Navajo Nation policy is to discourage the breaking up of land. Progressive fragmentation of the land de *537 creases usefulness of the land. See In the matter of the Estate of Wauneka., 5 Nav. R. 79, 83 (Nav.Sup.Ct.1986).[5]
When the Family Court made its decision to grant the grazing permit to Attakai, it did not apply the principles discussed above. Absent any other cooperative arrangement by the clan with which the lower court is satisfied, failure to apply the principles is an error of law, which is reviewed by this Court de novo. The issue of the ownership of the permit is therefore reviewed de novo in light of the tradition of female management of the land and livestock using the factors set out in Keedah.
For the foregoing reasons, this Court concludes Riggs is the appropriate person. When Riggs filed her action, Tom Attakai lived away from the Castle Butte area. He lived in Sanders and later in Fort Defiance, whereas Sista Riggs consistently lived in the family area. Riggs had already been managing not only her own herd, but the herd held in trust for the family.
By placing the grazing permit with Sista Riggs, there is assurance that the land and herd will remain with the family, and that the grazing permit will remain intact and not be fragmented. The record contains testimony that Tom Attakai and his father had attempted to either sell or rent the grazing permit to others outside the family and dan.
The court’s decision to grant the grazing permit to Attakai so he and his sisters would have a sense of home is not sufficient reason to grant the grazing permit to Attakai, because the lack of grazing permit in one’s name does not prevent a Navajo from obtaining home site leases. Additionally, Phillip Attakai remains at the home site he previously shared with his late wife. The sisters are not precluded from going back to that home site simply because they do not have a grazing permit in their own names. The Court concludes that Sista Riggs should be the trustee of the permit.
*538 III
The Court affirms the Family Court’s decision that Tom Attakai’s sisters should be the beneficiaries of the permit. The Family Court ruled that Tom’s sisters should be the beneficiaries, though it did not clearly state why. Riggs argues here that the beneficiaries should also include her siblings, contending that Tom Attakai’s sisters do not currently live in the Castle Butte area and therefore cannot benefit from the permit. However, Riggs’ siblings are already the beneficiaries of a separate permit Riggs holds as trustee that she received after her mother’s death. As they already share the other permit, it is not improper for the Family Court to decide the next generation of women in the family should be the beneficiaries of this permit. It is reasonable for the Family Court to decide that Sista may hold the permit for use in the Castle Butte area and allow Tom’s sisters to use the permit in the future if they decide to. The Court therefore affirms that part of the Family Court’s decision.
IV
Riggs also appeals the denial of her motion for summary judgment and asks the Court to grant the grazing permit to Riggs because after Attakai’s death, she was the surviving party and no one filed a motion to substitute the deceased nor did the court address the death of the party. Since we reverse the Family Court’s decision on other grounds, there is no need to address the denial of the summary judgment.
V
The Window Rock Family Court judgment, granting Tom Attakai Grazing Permit No. 7-68 is REVERSED and VACATED. This matter is REMANDED to the Family Court to enter an order granting Grazing Permit No. 7-58 to Sista Riggs to hold as trustee for the sisters of Tom Attakai.
J. BENALLY filed an opinion concurring in the judgment.

. The maternal clan is Ta'neezahnii. Other family members also had grazing permits within the area, including Riggs. Riggs is sister to Mary Lou and a maternal aunt to Tom Attakai.

. May Lou Attakai⅛ husband, Phillip is from Leupp and he has a separate grazing permit outside district 7.

. In some cases, the probate code might allow a husband to obtain the grazing permit although he is of a different clan. Most likely he is permitted to hold the permit in trust for his children who are of the same clan as the deceased mother. In other cases a male member of the clan may be granted a permit so long as he meets the criteria set out in Keedah. It is not known how Old Man Paddock obtained the grazing permit in this case, but he made it dear it was to stay within the family.

. Contrary to the characterization in the dissenting opinion, this opinion does not mean that the gender of the claimant is dispositive. The dissent states that this opinion makes the Keedah factors “irrelevant.” Dissenting opinion, infra, slip op. at 7. In fact, the rule set out in this opinion is that the Keedah factors and traditional law on women's role in Navajo society should be considered together to decide the most logical trustee, not that if a female and a male both claim the permit, regardless of their connections to the land, the permit automatically must go to the female. Indeed, this opinion concludes that the Family Court erred in not applying the Kee-dah facts, and applies them directly to the facts, along with traditional law principles, to decide the case. Majority opinion, infra, slip op. at 4-5. Further, the dissent's primary concern appears to be that the Court allegedly applies Fundamental Law where there are statutes covering a situation to improperly “evade” existing law. Dissenting opinion, infra, slip op. at 7. However, this Court applies Diñé bi beenahaz’áanii alongside statutory law as the law of the Navajo Nation, as mandated by the Navajo Nation Council. See 1 N.N.C. § 203(E) (“The leader(s) of the Judicial Branch (Al>a>aj>i' Hashkééjí Naat’ááh) shall uphold the values and principles of Diñé bi beenahaz’áanii in the practice of peace making, obedience, discipline, punishment, interpreting laws and rendering decisions and judgments."). Consistent with this mandate, the Court's approach is to reconcile statutory and Fundamental Law to define the law of the Nation. See, e.g., In re Grievance of Wagner, No. SC-CV-01-07, 7 Am. Tribal Law 528, 530-32, 2007 WL 5893637 at *3-4 (Nav.Sup. Ct.2007) (reconciling Fundamental Law and Election Code); In re Appeal of Vern Lee, No. SC-CV-32-06, 6 Am. Tribal Law 788, 790-93, 2006 WL 6171261 at *2-4 (Nav.Sup.Ct.2006) (same); In re Estate of Kindle, No. SC-CV-40-05, 6 Am. Tribal Law 750, 754, 2006 WL 6168972 at *3-4 (Nav.Sup.Ct.2006) (same for Probate Code).