OPINION

This appeal arises from the Kayenta Family Court’s August 10, 2009 dismissal of Appellants’ Petition for Quiet Title to a Livestock Grazing Permit No. 8-487 on the basis of lack of subject matter jurisdiction. We reverse the dismissal and remand with instructions to the family court.
BACKGROUND
This family dispute spans 25 years and concerns the distribution of grazing permit no. 8-487, which was held by decedent Martha Francis (a widow) solely in her name. Decedent made efforts to transfer the permit during her lifetime. In 1986, decedent met in her home with all her children (Appellees), their niece Dorothy Francis (Co-Appellant), and Thomas Red-house, the local grazing committee official, and informed them that she wished that the permit pass to her children and Dorothy Francis. Dorothy Francis subsequently objected to the proposed distribution and later sought unsuccessfully to change decedent’s mind. The district grazing committee did not act on transferring the permit during decedent’s lifetime.
Decedent passed away on December 28, 1992. On March 5, 1996, after meeting only with Appellees, the District 8 Grazing Committee issued a recommendation to distribute the permit in accordance with decedent’s wishes. Per this recommendation, two of decedent’s children would receive 50 sheep units, one child would receive 83 sheep units, and Dorothy Francis’ daughter Irene Price (Co-Appellant) would receive 50 sheep units.
In October, 1998, Appellee Jane Betsuie opened a peacemaking probate matter in the Kayenta Judicial District, which was given the number KY-PC-066-98. The grazing committee referred its recommendation to the Kayenta Judicial District. Peacemaker Liaison, Chester Stanley. The peacemaking probate matter progressed to the issuance of a Notice of Publication by Mr. Stanley on October 12, 1998. However, Dorothy Francis refused *103 to participate and Irene Price stated that she disputed the recommended distribution, whereupon Mr, Stanley advised Ms, Price to take up the matter with her grazing official. No action was further taken in the peacemaking probate.
On November 4, 1998, Appellants appeared before the grazing committee to request that they recommend more sheep units to be allocated to Ms. Price on the basis that Appellants had not been present at the committee’s 1996 meeting with Ap-pellees. The committee approved their request. On March 5, 1999, Appellees wrote a letter to the committee disagreeing with their November 4, 1998 decision and requesting that the committee instead return to their March 5, 1996 recommendation. The committee did not respond.
On February 18, 2009, Appellants filed a quiet title action in the Kayenta Family Court. On April 30, 2009 the Appellees filed a motion to dismiss, asserting that there had been an inter vivos transfer of the permit, that the dispute was still before the district grazing committee, and that otherwise, the Office of Hearings and Appeals (OHA) was the proper forum pursuant to Navajo Nation Council Resolution No. CO-59-03 (October 31, 2003).
Relying solely on Charley, et al. v. Benatty, 7 Am. Tribal Law 647, 650-51 (Nav.Sup.Ct.2008), the family court decided on August 10, 2009 without a hearing that OHA was the proper forum on the basis of Resolution CO-59-03, which transferred the authority for resolving grazing rights, land boundaries and fences from the Resources Committee of the Navajo Nation Council to OHA except those appeals pending an official decision by the Resources Committee. The family court thereupon dismissed the quiet title action for lack of subject matter jurisdiction. On August 26, 2009 the Appellants filed their Notice of Appeal. On September 24, 2009, Appellants filed their opening brief and on October 23, 2009, Appellees filed their response brief in which attorney fees and costs were also requested. The Court hereby enters its decision based upon the submitted briefs.
ISSUES
We first observe that the issues are broader than the single issue appealed, w'hich is whether CO-59-03, in transferring authority for resolving grazing rights, land boundaries and fences from the Resources Committee to OHA, also divested the family courts of jurisdiction over quiet title actions concerning grazing permits. As demonstrated by the record, there are issues regarding justiciability due to at least three different forums being pursued to resolve the donor’s intent concerning a single grazing permit. Under the Dine principle of ná bináheezláago bee t’áá lahjí algha’ deet’á, disputes are to be addressed in a comprehensive manner so as to achieve finality. Goldtooth v. Naa Tsis’ Aan Community School, Inc., 8 Am. Tribal Law 152, 156-57 (Nav.Sup.Ct.2009). The principles of comprehensiveness and finality fall within the concept of justicia-bility on the Navajo Nation. If a matter is pending in multiple forums, the parties may be so situated that the court’s determination would provide neither comprehensiveness nor finality.
In this case, Appellees’ March, 1996 appearance before the district grazing committee was raised in order to contend that the district court is the wrong forum, due to the matter being open before that committee pending issuance of its final recommendation. The previously filed peacemaking probate action was mentioned only as pari of the procedural history. However, it is the view of this Court that both these cases have substantial bearing on justiciability.
*104 The Court may sua sponte present jurisdictional issues and raise jurisdictional arguments not presented by the parties. See Dale Nicholson Trust v. Chavez, 8 Nav. R. 417, 424, fn. 2, 5 Am. Tribal Law 365 (Nav.Sup.Ct.2004). The manner in which open and unresolved matters that concern Grazing Permit 8-487 are to be treated impacts the authority of the family court to provide legal relief and finality to the parties in this action. Where a court cannot provide adequate resolution of the dispute and offer a final determination, the matter is not justiciable. This Court will address the additional issues set forth above to the extent that they bear on jurisdiction and the responsibilities of the family court upon remand.
Secondly, in their motion to dismiss before the family court, Appellees contend that there was an inter vivos transfer of the grazing permit and, therefore, the permit could not be the subject of a probate or quiet title action. The record shows that Appellees went before the District 8 Grazing Committee in March, 1996 and obtained their recommendation for distribution of the grazing permit pursuant to decedent’s wishes. The committee transmitted their recommendation for distribution to the peacemaking office of the Kayenta District Court in 1998, and a peacemaking probate case was subsequently opened in that office. Whether or not an inter vivos transfer was completed in the decedent’s lifetime will bear upon the appropriateness of a quiet title action as opposed to a probate action.
STANDARD OF REVIEW
The interpretation of the effect of a Navajo Nation Council resolution is a question of law that this Court reviews de novo. See, e.g,, In re A.M.K., 9 Am. Tribal Law 191, 197-98 (Nav.Sup.Ct.2010); Green Tree Servicing, LLC v. Duncan, 7 Am. Tribal Law 633, 637 (Nav.Sup.Ct.2008); Navajo Transport Services v. Schroeder, 7 Am. Tribal Law 516, 519 (Nav.Sup.Ct.2007).
SUBJECT MATTER JURISDICTION
The sole issue appealed is whether Resolution No. CO-59-03, by transferring authority to resolve disputes concerning “grazing rights, land boundaries and fences” from the Resource Committee to OHA, also made OHA the exclusive forum for resolving such disputes, thereby divesting the family courts of their authority to hear and decide such matters even when brought to the eourt as part of probate and quiet title actions.
Prior to the passage of Resolution No. CO-59-03 in 2003, the jurisdiction of the family court to hear probate and quiet title actions that involve land use permits had been firmly established since 1991 in our common law. 7 N.N.C § 253(B) was enacted on August 16, 1989 establishing the family courts with original jurisdiction over all cases involving family matters, including domestic relations and probate. We take judicial notice that quiet title actions frequently substitute for probate actions on the Navajo Nation either when a decedent’s family has failed to meet the probate statute of limitations or when a decedent’s estate includes only a homesite lease or land use permit. In two cases involving certified questions on the matter of court jurisdiction over quiet title actions, this Court stated that both types of actions have family overtones. Noting that “[t]he Navajo Nation Council intended, through its 1989 creation of the family court, that family concerns should be handled in a court for families,” the Court concluded that the family court was the more appropriate forum to handle quiet title actions since the family court usually resolves disputes among family members in relation to *105 collective property rights. In the Matter of Sharon Harvey, et al. and Goldtooth Begay, et al., 6 Nav. R. 413, 415 (Nav.Sup.Ct.1991). The Court stated:
The word “land” in Navajo is ski keyah, or “That which is beneath my feet.” As a general principle, Navajo land tenure is based on communal or family land use, and “that which is beneath [the] feet” of most Navajos is held for general family use ... Given that most land use questions within the Navajo Nation deal with families or even neighbors who are often related by clan, the family court is the more appropriate court to handle quiet title actions.
Id. at 415.
It must be noted that because quiet title actions presume one or more adverse claimants against an individual’s right to title, it is fundamentally a bilagaana process pitting claimants against one another in an adversarial contest rather than provide a means for a family to resolve differences regarding disposition of a decedent’s property for the family’s future benefit as a whole. As such, quiet title actions are disfavored as a means to address old probate matters and should be used as a last resort.
In Begay v. Keedah, 6 Nav. R. 416, 421 (Nav.Sup.Ct.1991), this Court acknowledged the following Navajo Nation policies gleaned from Navajo statutes to be considered when determining the award of a grazing permit: 1) animal units in grazing permits must be sufficiently large to be economically viable, 2) land must be put to its most beneficial use, 3) the most logical person should receive land use rights, 4) use rights must not be fragmented, and 5) only those who are personally involved in the beneficial use of land may be awarded it. Id. In Sista Riggs v. Estate of Attakai 7 Am. Tribal Law 534 (Nav.Sup.Ct.2007), we held that these factors are to be considered and applied consistent with the Navajo Fundamental Law, specifically, that the clan line typically maintains a land base upon which the clan lives, uses the land for grazing and agricultural purposes and maintains the land for medicinal and ceremonial purposes. For the most part, Navajos maintain and carry on the eustom that the maternal clan maintains traditional grazing and farming areas. See Id., 7 Am. Tribal Law at 536. This concept forces those in the clan who don’t have livestock to take up that responsibility. Fair distribution is the result. A decedent’s desired distribution must be consistent with this concept, and so appears in this case.
Recently, this Court affirmed the authority of the family courts to hear and decide a probate action involving distribution of a grazing permit. See In the Matter of the Estate of Nat D. Benally v. Donald Kee, et al., 8 Am. Tribal Law 246 (Nav.Sup.Ct.2009).
We look first to the plain meaning of the statute. Dilcon v. Jensen, 8 Nav. R. 28, 36, 2 Am. Tribal Law 502 (Nav.Sup.Ct.2000) citing Navajo Nation Division of Resources v. Spencer, 5 Nav. R. 109, 111 (1986). Resolution No. CO-59-03, codified at 2 N.N.C. §§ 691-696 and 3 N.N.C. §§ 65-949 transfers to OH A the Resource Committee’s authority to “review, monitor, mediate and resolve disputes concerning land boundaries, grazing rights, and fences within the Navajo Nation.”[1] No part of *106 Resolution No. CO-59-03 establishes OHA as the exclusive dispute resolution forum. Neither are the words “grazing permit” used in these statutes. In fact, by providing that difficult cases shall be referred by district grazing committees to OHA “in an attempt to settle differences out of court,” amended 2 N.N.C. § 875(A)(7) actually contemplates the courts as a dispute resolution forum for cases where differences cannot be settled.
In Charley, et al. v. Benally, 7 Am. Tribal Law 647 (Nav.Sup.Ct.2008), this Court undertook a limited review of Resolution No. CO-59-03 that did not include the present issue. In Charley, we addressed only the issue of whether OHA has jurisdiction to hear and decide a grazing dispute which predates Resolution No. CO-59-03 and held that “OHA has jurisdiction to hear and decide a grazing dispute which predates Navajo Nation Council Resolution CO-59-03 where an official decision is inadequate to conduct an appellate review.” Id., 7 Am. Tribal Law at 652. The Court did not also address the impact of Resolution No. CO-59-03 on the authority of the family courts to hear quiet title actions. Therefore, the reliance of the Kayenta Family Court on our holding in Charley is misplaced.
OHA, an administrative quasi-judicial hearing body whose authority must be granted by statute, is not authorized to hear quiet title or probate actions. As demonstrated by Harvey, supra, the family court’s general jurisdiction over a probate action necessarily includes a decedent’s entire estate, with no portion parsed out to other tribunals due to the nature of the property. No statute requires such parsing whether in a probate or quiet title action, especially when it is evident that the parties will not settle.
Finally, Appellees assert that this action is not proper because a matter concerning the grazing permit has been “on hold” for ten years now before the district grazing committee, in which the committee’s recommendation has been disputed and awaits their response. However, the Navajo Nation Code confers on the grazing committee only the authority of a mediator over permit disputes. 3 N.N.C. § 875 provides that the committee may serve as mediator and “shall” refer difficult cases to OHA “in an attempt to settle differences out of court.” The parties need not wait years for the committee to make this referral and thereby, lack further recourse to justice in the meantime. For those disputes which the people themselves cannot resolve, the parties may seek out a justice system which can render decisions within a reasonable time; otherwise, the due process right of the people to be accorded fair and timely justice is violated. Such a system is afforded by the family court.
For the foregoing reasons, we hold that Resolution No. CO-59-03 did not establish OHA as the exclusive forum for resolving disputes concerning grazing permits and did not divest the family courts of their authority to hear and decide such matters as part of probate and quiet title actions.
JURISDICTION OVER DECEDENT’S INTENTIONS
The inquiry does not stop here. In this case, the decedent’s intentions were brought by the family before a district grazing committee within four years of her passing; the committee’s recommendation for distribution was then transmitted to *107 the peacemaking office of the Kayenta District Court, and a peacemaking probate case was opened. Ten years later, Appellants commenced this quiet title action. It is apparent that the procedural history of this case, spanning three different forums and more than a decade, was not the result of forum shopping so much as confusion resulting from overlapping authorities and jurisdictions with none of the cases in any forum processed to a final decision and formally closed.
We note that a district grazing committee has authority to transfer grazing permits and issue recommendations regarding those permits pursuant to 3 N.N.C. § 875. It would, therefore, be an appropriate body to complete an inter vi-vos transfer of a permit or, otherwise, ensure a decedent’s wishes regarding a permit were respected through the committee’s recommendation. We further note that peacemaking probate is offered by the peacemaking liaison field offices of our judicial district courts as a traditional alternative to court probate. In peacemaking probates, where a lawyer or advocate is prohibited from participating the peacemaking liaison performs all the services needed to guide the family through the peacemaking process, including search Vital Records for all heirs, place a Notice of Publication in the papers, and collect all necessary fees including the court filing fee. A peacemaking session takes the place of a court probate hearing, following which a peacemaking probate agreement would be recognized via court order. Finally, a quiet title action is pursued as an alternative to probate, often when the statute of limitations has passed.
Pursuant to 7 N.N.C. § 602(D), probate actions must be commenced within five years of decedent’s passing. Whether or not bringing a decedent’s wishes before a district grazing committee counts as commencement of a probate action, whether it otherwise tolls the statute of limitations, or whether it is simply the wrong forum becomes significant, as in this case, when a decedent’s intentions are the subject matter of family court adjudication.
We note that the probate statutory time limit exists in other jurisdictions for purposes of imposing a reasonable limit on the time in which the property of a person dying testate should be distributed. See, e.g., In re Estate of Rothrock, 312 S.W.3d 271 (Tex.App.Tyler 2010). This means that persons wishing to present a will for probate must do so within the applicable time limits, otherwise the probate of that will is precluded. See, e.g., Krueger v. Farmers & Merchants Bank of Hannibal, Mo., 565 F.Supp. 455 (E.D.Mo.1983); In re Politte’s Estate, 460 S.W.2d 733 (Mo.Ct.App.1970).[2]
7 N.N.C. § 602(D) requires only that a probate action be “commenced” within the time limit. In this case, three different forums exist, each with authority over the distribution of the grazing permit, and each forum was in fact sought out by the family. In In re Estate of Begay, 6 Nav. R. 405, 406 (Nav.Ct.App.1991), we stated that probate actions use both the statute of limitations and equity in determining appropriate time of filing. In that case, we stated there is an equitable need *108 that “disputes be put to rest after a reasonable period of time.” Id. Here, it is equity that calls upon us to acknowledge the availability of multiple forums in which a family may reasonably seek the distribution of a grazing permit, whether in probate or equivalent actions. Ultimately, equity demands that we hereby find that the commencement of a probate or equivalent action in a grazing committee or peacemaking probate effectively tolls the statute of limitations pursuant to 7 N.N.C. § 602(D).
INTER VIVOS TRANSFER
Diñé Fundamental Law treats the wishes of an individual regarding distribution of his or her estate with great respect. It is presumed that an individual who is seeking to distribute items for family and community use does so while looking to the harmony and future benefit of the family as a whole and is in the best position to make such decisions. However, our laws provide that when the individual is also a decedent, there must be sufficient reliability regarding the statement of those wishes so that the community can be certain that the decedent’s intent regarding future beneficial use of property is both true and accurate.
For inter vivos gifts asserted after the death of an alleged donor, “we take precaution which requires explicit and convincing evidence that every element of a valid gift inter vivos is made.” Damon v. Damon, 8 Nav. R. 226, 233, 4 Am. Tribal Law 594 (Nav.Sup.Ct.2002). If an inter vivos transfer as has been asserted by Appellees was completed, it would foreclose further adjudication regarding the permit, and therefore must be first determined by the remand court. Long ago, citing to cases in bilagaana jurisdictions for guidance on what would constitute an inter vivos gift in a mobile home matter, the Court of Appeals stated there must be donative intent, delivery and the vesting of irrevocable title of the mobile home upon such delivery. See In the Matter of the Estate of Joe Dee Nelson, 1 Nav. R. 162 (Nav.Ct.App.1977), citing Scoville v. Vail Investment Co., 55 Ariz. 486, 103 P.2d 662 (1940) and Armer v. Armer, 105 Ariz. 284, 463 P.2d 818 (1970). However, unlike title to a mobile home, grazing permit transfers involve special circumstances involving the welfare of the tribe as a whole. A grazing permit is not capable of simply being delivered to a beneficiary by the permit owner, as that process necessarily involves concurrence by the district grazing committee, who would consider Navajo Nation use of land policies when giving effect to the donor’s intent. This Court enumerated the policies to be considered by our courts in Begay v. Keedah, 6 Nav. R. 416, 421 (Nav.Sup.Ct.1991).[3]
Donative intent may be gleaned from the circumstances of decedent’s oral distribution of the grazing permit to the family members, namely, whether decedent, in making the distribution, gave her words as a traditional Diñé person would without contemplating further change, bee siz\ or has taken a resolute position without ambiguity, doo naaki nil\\da, and has done so in the presence of witnesses. In this case, decedent’s family members and an elected public naat’áanii witnessed her statements. It further appears that the elected naat’áanii had been called to witness the act as part of his official capacity as a grazing committee man to oversee *109 such matters. It appears that there are clear indicia of reliability under Navajo custom and tradition in this case.
However, the grazing committee only acted on the donative intent after decedent’s passing. It is possible that the remand court may find that no transfer was completed in decedent’s lifetime. We have previously stated that “in instances where the donor in a gift inter vivos situation dies before actual or effective delivery of a grazing permit and absent any written will dictating descent or where the will is silent on that issue, such permit should be transferred to the Navajo Nation’s intestacy law or to marital interest law as the case may be.” In the Matter of the Estate of Joe Dee Nelson, 1 Nav. R. 273 (Nav.Ct.App.1977). Since that decision, the law on wills has advanced, and oral wills are now recognized and enforced by our courts when all members of the testator’s immediate family are present and agree. See In the Matter of the Estate of Howard, 7 Nav. R. 262, 265, 1 Am. Tribal Law 438 (Nav.Sup.Ct.1997). The remand court will, therefore, also have to determine whether an oral will was developed in the present circumstance.
FEES AND COSTS
The Court of Appeals stated that “[glrazing permits and their dispositions are highly and emotionally sensitive to the Navajo People and generally give rise to highly emotional controversies.” In the Matter of Nelson, supra. This is clearly the case here, where an internecine familial dispute has been ongoing for a quarter of a century over what appears to be some handfuls of sheep units in disregard of the decedent’s intent, with both sides resorting separately to the peacemaking probate process, the district grazing committee, and the family court without any familial cooperation and now the family members are all growing old not having enjoyed the benefits of a valid permit.
We first note that Navajo law does not require that fees be awarded to the prevailing party. Under Navajo law, each party is responsible for their own attorney’s fees unless there is a special set of circumstances. Wirtz v. Black, 7 Am. Tribal Law 553 (Nav.Sup.Ct.2007) citing Hall v. Arthur, 3 Nav. R. 35, 41 (Nav.Ct.App.1980). The award must fall within an existing special circumstance recognized by this Court. If it does not, the trial court must include supporting findings of fact and conclusions of law to justify a new exception. Id. at 43-44.
It is undisputed that Appellants refused to accept the decedent’s intended distribution, and refused to participate in the peacemaking probate process due to unhappiness with the proposed distribution. Such conduct must not be rewarded. However, participation in family meetings and peacemaking is voluntary. Even though Appellants’ refusal to participate appears to have prolonged this dispute by a decade, attorney fees and costs cannot be given on that basis. Additionally, the filing of a quiet title action under the circumstances is neither frivolous nor inappropriate. Therefore, we find that special circumstances under the rule established in Hall v. Arthur, 3 Nav. R. 35, 41 (Nav.Ct.App.1980) are not met, and attorney fees and costs will not be awarded.
INSTRUCTIONS ON REMAND
This matter will be remanded with the following instructions:
The remand court shall look into whether there has been a completed inter vivos transfer of the grazing permit in question. If it finds that an inter vivos transfer was not completed, it shall explore whether *110 decedent’s intent may be given alternative legal effect as an oral will.
If the decedent’s intent fulfills the requirements for an oral will under Navajo Nation law, the remand court shall consider the probate statute of limitations effectively tolled and shall convert the quiet title action to a probate action.
CONCLUSION
For the foregoing reasons, the Kayenta Family Court’s dismissal of Appellants’ quiet title action is hereby REVERSED. IT IS FURTHER ORDERED that this matter be REMANDED to the Kayenta Family Court for proceedings consistent with this opinion.

. There continues to be development and changes in our government system, not only the legislative committee system but also in the scope of authority of our administrative tribunals. As the Government Reform Project moves forward, clarification hopefully will be made as to the extent of the authority and role of OHA and the Resource Committee in relation to each other. We bear in mind that until the people decide through the Govern *106 ment Reform Project what form of government they want to be governed by changes in governmental structure are, essentially, temporary. See, e.g., Shirley v. Morgan, Opinion and Order on Reconsideration, 9 Am. Tribal Law 78, 83 (Nav.Sup.Ct.2010).

. A late filing does not mean that a decedent's estate may never be legally distributed. A decedent's family may still seek distribution of the decedent's estate through intestate administration after the statute of limitations has passed, in which case any will, oral or otherwise, may not be presented to the court. Any other interpretation would lead to the absurd result of a decedent’s estate being incapable of formal distribution through the probate family court when a family is late in filing.

. 1) animal units in grazing permits must be sufficiently large to be economically viable, 2) land must be put to its most beneficial use, 3) the most logical person should receive land use rights, 4) use rights must not be fragmented, and 5) only those who are personally involved in the beneficial use of land may be awarded it. Begay v. Keedah at 421.