NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

*In re the Matter of:*

CHE NIKOLAI LYNUM, *Petitioner/Appellant*,

*v.*

TIFFANY TELANA TAVARES, *Respondent/Appellee.*

No. 1 CA-CV 17-0342 FC
FILED 7-26-18

Appeal from the Superior Court in Maricopa County
No. FC2009-000705
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Erica L. Gadberry
*Counsel for Petitioner/Appellant*

Udall Shumway, PLC, Mesa
By Sheri D. Shepard
*Counsel for Respondent/Appellee*

---

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

---

**C A T T A N I**, Judge:

¶1        Che Lynum ("Husband") appeals from the superior court's decision awarding Tiffany Tavares ("Wife") spousal maintenance arrearages of $388,000.  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        The superior court entered a consent decree of dissolution (the "Decree") for Husband and Wife in January 2010.  Under the Decree, Wife received spousal maintenance of $3,500 per month plus a percentage of every dollar Husband earned between $100,000 and $999,999 annually.[1]

¶3        Wife petitioned to enforce the Decree's child support and spousal maintenance provisions in 2010 and again in 2011, but in both instances, Husband became current on his payments shortly after Wife's filing. Wife again petitioned the superior court to enforce child support and spousal maintenance in August 2015.  Representing herself, and using a form petition provided by the superior court, Wife asserted that Husband had not paid spousal maintenance or child support from June 2013 to August 2015, and was thus in arrears $87,500 for spousal maintenance ($3,500 per month) and $30,000 for child support ($1,500 per month). Within days of filing her petition to enforce, Wife requested Husband's financial information from 2012 to 2014 to enable her to determine the total amount of spousal support owed.  Husband did not respond to Wife's petition to enforce but instead petitioned the court to modify child support, alleging that his income had "precipitously fallen since entry of the decree."

¶4        In October 2015, the State notified both parties that a determination of Husband's income was necessary to calculate Husband's

---

[1]    Under the Decree, Husband also agreed to $1,500 monthly child support.  Although the superior court also found that Husband was in arrears regarding child support, Husband did not challenge that aspect of the court's ruling.

2

arrearages, and requested that the parties provide that information. Similarly, Wife asserted in her response to Husband's petition to modify that Husband owed *more than* $200,000, and that she could not address Husband's assertion that his income had dropped until Husband disclosed information that could be analyzed by a forensic accountant.

¶5        After an evidentiary hearing, the superior court concluded that Husband's income for child support and spousal maintenance purposes was $327,120.72 in 2012; $702,132.60 in 2013; $548,256.60 in 2014; $496,483.38 in 2015; and $496,483.38 in 2016, and that the total arrearages for spousal maintenance were $388,689.72.  The court attributed to Husband income beyond the amount he claimed, reasoning that because Husband's companies paid for nearly all of his personal expenses, such expenses should be attributed to him as income.  The court also denied Husband's petition to modify child support.  Husband moved for, and was denied, a new trial.  He then timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(2), (5)(a).

## DISCUSSION

### I.      Total Arrearages.

¶6        Husband argues that the superior court erred by awarding Wife spousal maintenance arrearages of $388,000 because he did not receive proper notice, and that Wife was judicially estopped from claiming a greater total of arrearages than was stated in her petition.  We review issues of notice and other matters of law de novo.  *Wilmot v. Wilmot*, 203 Ariz. 565, 569, ¶ 10 (2002); *In re Estate of Dobert*, 192 Ariz. 248, 252–53, ¶ 18 (App. 1998).

¶7        Husband asserts that because Wife's petition to enforce claimed that the total spousal maintenance owed was $87,500—which would have been the minimum owed under the Decree—he did not receive notice that his income was in dispute or that he owed more than $87,500 in spousal maintenance.  But the petition was to enforce the terms of the Decree as agreed upon by Husband.  And those terms unequivocally stated that spousal maintenance was dependent on Husband's income and that as his income increased, so too would spousal maintenance.  Thus, Husband cannot claim he had no notice that his income was at issue or that he could be liable for an amount beyond the minimum spousal maintenance contemplated in the Decree.

¶8        Moreover, nearly a year before the evidentiary hearing, Wife requested Husband's financial information to determine his income, and the State informed the parties that Husband's income needed to be

determined before the spousal maintenance arrearages could be calculated. And, as previously noted, when Husband requested modification of child support shortly after Wife filed her petition to enforce, Wife asserted that Husband's income was in dispute and that he owed at least $200,000 in spousal maintenance.

¶9 To the extent Husband argues untimely disclosure of Wife's expert witness report caused insufficient notice, we disagree. Mother timely disclosed her expert witness, and although the expert's report was delayed—it was not disclosed until one week before trial—the delay was caused primarily by Husband's failure to respond to Wife's requests that he produce documents (including, for example, Husband's corporate credit card statements) needed for the expert's analysis.

¶10 Husband further argues that under *Armer v. Armer*, 105 Ariz. 284, 288 (1970), Mother cannot claim arrearages beyond the amount specifically pled. But *Armer* simply noted that "[p]arties are bound by their pleadings" and a party may not introduce evidence in contradiction of express allegations in the party's complaint. *Id.* The court held that because the defendant in that case had not designated in his responsive pleading any specific household items he believed were separate property, the trial judge validly presumed that all of the property in the house was community property. *Id.* Here, in contrast, Wife's pleadings made clear that Husband's income was in dispute and that the potential amount owed was greater than $87,500. Thus, Husband's reliance on *Armer* is misplaced.

¶11 Husband's claim that Wife was judicially estopped from arguing greater arrearages than she asserted in her petition is similarly unavailing. Judicial estoppel requires, *inter alia*, that a party have successfully asserted, in a prior judicial proceeding, a position that was inconsistent with a newly asserted position. *In re Marriage of Thorn*, 235 Ariz. 216, 222, ¶ 27 (App. 2014). Wife's petition is not a prior judicial proceeding and Husband does not cite any prior judicial proceeding that was resolved in Wife's favor based on a position inconsistent with what Wife has asserted in the instant proceedings. Accordingly, judicial estoppel is inapplicable.

## II. Attribution of Income.

¶12 Husband next argues that the superior court erred in determining his income. We review the superior court's computation of income for an abuse of discretion. *See Engel v. Landman*, 221 Ariz. 504, 514, ¶ 42 (App. 2009). We view the evidence in the light most favorable to

upholding the superior court's findings and will uphold those findings if supported by any reasonable evidence. *Mitchell v. Mitchell*, 152 Ariz. 317, 323 (1987).

**¶13**      Husband argues that because the Decree unambiguously states that his "gross income" is to be used to determine spousal maintenance, his gross income for tax purposes is the relevant amount to be used in the calculation. But gross income may be calculated differently in different contexts. For example, under the Arizona Child Support Guidelines, A.R.S. § 25-320 app. ("Guidelines"), gross income for purposes of child support is expressly different than gross income for tax purposes and may include "[e]xpense reimbursements or benefits received . . . in the course of employment . . . or operation of a business . . . if they are significant and reduce personal living expenses." *See* Guidelines § 5(D). And here, the court used the Guidelines to calculate Husband's income for purposes of his petition to modify child support, and Husband offers no compelling reason for the court to have departed from that calculation for purposes of spousal maintenance.

**¶14**      Husband argues that applying the Guidelines definition of gross income might artificially inflate a spouse's income such that the resulting maintenance amount is beyond the former spouse's ability to pay. But Husband had an opportunity to show that attribution of additional income would render an inappropriate or unjust result, and the record here supports the superior court's conclusion to the contrary. In the context of Husband's ownership interest in over 100 entities conducting business amongst themselves, the court could reasonably conclude that the businesses' payments for Husband's living expenses were in effect distributions, salaries, and benefits that were shielded by this business scheme.

**¶15**      And the superior court's specific attribution of income to Husband was not an abuse of discretion. Husband claimed a $60,000 annual salary on his affidavit of financial information, but his bank account included $15,000 in unidentifiable cash deposits, and his companies paid $17,000 annually for his car lease. His companies also paid roughly $81,500 annually for his housing—including housing in Phoenix, Los Angeles, and Chicago. The value of housing paid for by an employer or as part of the operation of a business may be considered part of a parent's gross income if it reduces personal living expenses. *See* Guidelines § 5(D); *Patterson v. Patterson*, 226 Ariz. 356, 359–60, ¶ 10 (App. 2011). Although Husband asserts that the Chicago residence was only used for business, he did not dispute that the children stayed there with him during some of his parental

visitation time, and the superior court only attributed a portion (5/12) of the Chicago rent as income to Husband. Thus, the superior court did not abuse its discretion by attributing income of $81,500 to Husband based on housing expenses paid for by his business entities.

¶16 The superior court similarly did not abuse its discretion by attributing as income monies spent on Husband's corporate credit card. Husband used the corporate credit card for personal expenses, and his personal bank account showed few withdrawals for personal expenses. Although Husband did not substantiate any business expenses on his credit card, the superior court attributed only 44% of the expenditures as non-business expenses and therefore income to Husband, including, for example, expenses for cars and transport, phones, television, utilities, entertainment, food and dining, gifts and donations, health and fitness, personal care, books, clothing, electronics and software, sporting goods, and travel. These expenses amounted to $107,000 in 2012, $243,000 in 2013, $312,000 in 2014, $204,000 in 2015, and $204,000 in 2016.

¶17 Husband argues that the superior court further erred because (1) only six months of credit card statements were used to determine his income for a five-year period and (2) attributing income based on the credit card expenses amounted to a discovery sanction for not providing documentation to substantiate the charges as business expenses. But Husband does not claim that expenses reflected in the sample were atypical, and he did not otherwise provide support for his argument that using a six-month sample of statements was inappropriate. Husband's sanctions argument is likewise unavailing; the amounts attributed as income were limited to expenditures determined to be for personal use.

¶18 Husband also argues that because his employment did not change after he and Wife entered the Decree, and because the Decree incorporated a 2010 child support worksheet that stated Husband's annual income was $96,000, the law of the case doctrine should have precluded an inconsistent finding regarding his income. But the law of the case doctrine only applies to issues previously decided in the same case by the same or a higher court. *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278 (App. 1993). And here, Husband's income was never decided by any court. To the contrary, the terms of the Decree contemplated that Husband's income would vary, even to the point of exceeding $1,000,000 annually, far above the $96,000 Husband asserts was decided at the time of the Decree.

## CONCLUSION

¶19      For the foregoing reasons, we affirm.  Wife requests fees on appeal under A.R.S. § 25-324.  In an exercise of our discretion, we deny Wife's request for fees on appeal.  Nevertheless, as the prevailing party, Wife is entitled to an award of costs upon compliance with ARCAP 21.

